IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| *AUNDREA E. MATHIS,* TDCJ-ID#583934, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:05-CV-0523 |
| | § | |
| *WARDEN STEVENSON, et al.,* | § | |
| Defendant. | § | |

DEFENDANT EILEEN KENNEDY'S
MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

# EXHIBIT E

# Excerpt from
# Texas Department of Criminal
# Justice's Safe Prisons Plan

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE

## CORRECTIONAL INSTITUTIONS DIVISION



### *SAFE PRISONS PLAN*
(rev. 1)

## September 2005

0̃001

## *ADOPTION OF SAFE PRISONS PLAN*

In my duties as Division Director of the Correctional Institutions Division, I hereby adopt the attached *Safe Prisons Plan (rev. 1)* for use in the operation of the Texas Department of Criminal Justice. This *Plan* is in compliance with Sections 411.148, 492.013, 493.006(b), 494.002, 501.014 and 501.002, Texas Government Code; Sections 1.07, 22.011, 22.021, 31.01(2), 31.03 37.10, and 39.04, Texas Penal Code; Articles 42.19 and 56.045, **Texas Code of Criminal Procedure**; Chapter 261, Subchapter E, **Texas Family Code**; Chapter 48, **Human Resources Code**; Sections 153.1 – 153.7, 37 Texas Administrative Code; *General Appropriations Act,* SB1, TDCJ Rider 77, 77th Legislature; and 42 USC, Sections 1983 and 15601, *et seq.*


_____
Doug Dretke, Director
Correctional Institutions Division

9/02/2005
Date

# SAFE PRISONS PLAN
## TABLE OF CONTENTS

I.      Definitions

II.     Prevention:  Designated Unit Staff

    A.      Screening and Classification

    B.      Duties of the Unit Safe Prisons Program Coordinator

    C.      Duties of the Unit Investigative Team

    D.      Forensic Medical Examination Representative

III.    Intervention

    A.      Verbal Intervention Between Confrontational Offenders

    B.      Changes in Housing Assignments, Work Assignments, or Work-Shift Hours

    C.      Placement of Aggressive/Assaultive Offenders in Administrative Segregation or Change of Custody Due to Major Disciplinary Offenses

    D.      Transfer to Another Unit

    E.      Assignment to Safekeeping Status

    F.      Assignment to Administrative Segregation Protective Custody

    G.      Interstate Corrections Compact Transfer

    H.      Special Populations

    I.      Extortion

    J.      Sexual Abuse Allegations

        1.      Referral

        2.      Services and Responsibilities

IV.     Investigation

    A.      Requests for Offender Protection

00003

   1.  Unit Level Processing of Requests for Protection from other Offenders

   2.  Processing Requests for Offender Protection from Threat of Harm by a Staff Member

   3.  Housing Assignment Pending Investigation

   4.  Investigation of Request

   5.  Unit Classification Committee (UCC) Review of Investigations

   6.  State Classification Committee (SCC) Review

   7.  Removal from Protection Status

  B.  Guidelines for Investigation of Suspicious Activity by Offenders

  C.  Guidelines for Investigation of Sexual Abuse Incidents

V. Discipline/Prosecution

  A.  Extortion Activity

   1.  Office of the Inspector General (OIG)

   2.  Offender Disciplinary Action/Prosecution

   3.  Employee Disciplinary Action/Prosecution

   4.  Disposition of Extorted Funds

  B.  Sexual Abuse

VI. Recordkeeping and Monitoring

  A.  Forms

   1.  Offender Protection Investigation Log (SPP-01)

   2.  Offender Protection Investigation Summary (SPP-02)
      Offender Protection Investigation Form (SPP-02A)
      Offender Protection Witness Statement/Report of Interview (SPP-02B)

   3.  Extortion Investigation Checklist (SPP-03)

   4.  Offender Protection Investigation Checklist (SPP-04)

00004

5.    Sexual Abuse Investigation Checklist (SPP-05)

6.    Subsequent Offender Interview Form (SPP-06)

7.    Potential Predator Alert (SPP-07)

8.    Chain Interview Sheet (SPP-08)

9.    Inmate Trust Fund Request for Confiscation of Funds (SPP-09)

10.    Safe Prisons Investigation Form (SPP-10)

11.    USPP Offender Profile (SPP-11)

12.    Monthly Safe Prisons Report Meeting Flow Sheet (SPP-11)

13.    Notice to Offenders (SPP-13)

14.    Safe Prisons Sexual Assault Awareness Brochure (SPP-15)

15    Rights of Crime Victims (SPP-16)

16.    Notification of Business (SPP-17)

17.    Extortion Correspondence Review Form (SPP-18)

B.    Tracked Offenders

C.    Safe Prisons Program Office

00005

## SAFE PRISONS PLAN

The Texas Department of Criminal Justice (TDCJ) is committed to providing a safe environment to employees and to offenders serving time in its custody. With regard to the offender population, it is the responsibility of all TDCJ employees to safeguard offenders in their custody. In accordance with TDCJ policy, ED-03.03, "Safe Prisons Plan", TDCJ has "Zero Tolerance" for sexual abuse and any form of predation on offenders.

The Safe Prisons Program was mandated by the Texas Legislature to prevent "offender-on-offender" sexual assaults. TDCJ has implemented the Safe Prisons Program and carried it further to prevent and limit other acts of offender on offender aggression or violence (those acts that are frequently precursors to sexual assault).

Each offender deserves to complete their incarceration in safety. An offender does not have to prove his life is in danger to obtain protective custody, safekeeping status, or one of the other options available for protecting offenders. An offender does not have to undergo an assault before receiving protection. An offender does not have to fight his predator in order to receive protection. Sexual abuse should not be a way of life in prison. An offender's characteristics (physical size, mental/physical impairments, age, first-time offender, sexual orientation, etc.) or vulnerabilities, should be taken into account when considering whether an offender needs protection.

TDCJ employees play an invaluable role in the Safe Prisons Program. Staff participation in the program is essential in identifying aggressive behavior and taking the necessary steps to ensure safety and security of the institutions. It is the responsibility of every TDCJ employee to ensure the safety and security of offenders in the custody of the Agency.

00006

1.    Definitions

"Appropriate" means to bring about a transfer or attempted transfer of title to or other interest in property, whether to an offender or another; or to acquire or otherwise exercise control over property other than real estate.  Property is unlawfully appropriated when an offender intends to deprive the owner of the property:

- Without the owner's effective consent (consent is not effective if caused by deception or coercion); or

- If the property is stolen and an offender appropriates the property knowing it was stolen by another.

"Coercion" means a threat, however communicated:

- To commit an offense;

- To inflict bodily injury in the future on the person threatened or another;

- To accuse a person of any offense;

- To expose a person to hatred, contempt, or ridicule;

- To harm the credit or business repute of any person; or

- To take or withhold action as a public servant, or to cause a public servant to take or withhold action.

"Deprive" means to withhold property from the owner permanently or for some extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner; to restore property only upon payment of reward or other compensation; or to dispose of property in a manner that makes recovery of the property by the owner unlikely.

"Disabled Person" means a person with a mental, physical, or developmental disability that substantially impairs the person's ability to provide adequately for the person's care or protection and who is either 18 years of age or older or who is under 18 years of age and has the disabilities of minority removed.

"Elderly Person" means a person 65 years of age or older.

"Employee" means a full-time, part-time, or temporary Agency employee or contract employee.

"Extortion" means that a person commits extortion if he:

- Appropriates property by coercion or violence with intent to deprive the owner of the property.

00007

- Utilizes means of coercion or violence to demand that an action be performed by an individual.

"Forensic Medical Examination Victim's Representative" or "Victim's Representative" means an individual approved by the Warden who is a psychologist, sociologist, chaplain, social worker or case manager, and who has completed the TDCJ Sexual Assault Offender Victim Representative training.

"Fraud" means that a person commits fraud if he:

- Misrepresents personal information about oneself or one's intention to another person.

- Uses false information with the intent to harm, defraud and other person, or appropriate currency or property.

"Improper Sexual Activity with a Person in Custody" means the acts constituting improper sexual activity by a public servant with a person in custody as described in section 39.04 of the Texas Penal Code.

"Property" means personal property, including a document or money, which has or represents value.

"Oral Sodomy" means contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus.

"Protective Custody" is a classification within Administrative Segregation and is for offenders who require maximum supervision at all times and the highest degree of protection due to threats of harm by others or high likelihood of victimization. These offenders require a higher degree of safety and security in a more controlled environment than general population offenders in order to provide for their protection. The conditions of confinement for Protective Custody offenders are addressed in the *Administrative Segregation Plan*.

"Request for Offender Protection" means a request made due to a physical threat to an offender's safety from another offender or staff member. Requests for protection are not intended for AD-10.20, "Identifying and Reporting Facility Maintenance Requirements" issues, for treatment issues, or other issues that are more appropriately addressed through the Offender Grievance Procedure.

"Safekeeping" means a general population status that is assigned to offenders who need protection from other offenders, and whose need for protection could be met by housing them separately in the general population. Offenders assigned to Safekeeping are separated from other general population offenders by housing assignment. They are assigned to P2 through P5 or PJ Safekeeping status. Safekeeping offenders may participate in activities such as dining, work, school, library, law library, and religious functions with other general population offenders under staff supervision. However, whenever possible, Safekeeping offenders shall be separated from other general population offenders during the above named activities. Safekeeping offenders

shall be housed, recreated, and showered separately from other general population offenders to provide greater safety for them.

"Safe Prisons" means the TDCJ program developed and implemented to provide its offenders a safe and appropriate confinement. The program exists primarily for the purpose of preventing sexual abuse by offenders on offenders as well as acts of extortion.

"Safe Prisons Council" means the group of individuals whose members are appointed by the Correctional Institutions (CI) Division Director to provide guidance to the Safe Prisons Management Office (SPPO) and to executive administrative staff on offender protection issues.

"Safe Prisons Program Manager" means the individual appointed by the CI Division Director to direct the SPPO and whose duties include conducting statistical analyses of alleged sexual abuse; monitoring each alleged sexual abuse incident to ensure Agency compliance with current policies; identifying issues for further policy development; and facilitating Safe Prisons Program training and awareness programs for staff and offenders.

"Sexual Abuse" means forcing another person, by violence, threats of violence, or coercion, to perform a sexual act (a sexual act is any intentional contact between the genitals of one person and the genitals, mouth, anus, or hands of another person), sexual fondling, or sexual assault with an object, without the effective consent of that person. The term "sexual abuse" includes the acts constituting sexual assault or improper sexual activity with a person in custody as described in the Texas Penal Code. Sexual abuse does *not* include the following:

- Custodial or medical personnel gathering physical evidence, or engaged in other legitimate medical treatment, in the course of investigating prison rape;

- The use of a health care provider's hands or fingers or the use of medical devices in the course of appropriate medical treatment unrelated to prison rape; or

- The use of a health care provider's hands or fingers and the use of instruments to perform body cavity searches in order to maintain security and safety within the prison or detention facility, provided that the search is conducted in a manner consistent with constitutional requirements.

- The use of a correctional officer's hands or fingers for the purposes of legitimate searches.

"Sexual Assault" means the acts constituting sexual assault as described in sections 22.011 and 22.021 in the Texas Penal Code.

"Sexual Assault with an Object" means the use of a hand, finger, object, or other instrument to penetrate, however slightly, the genital or anal opening of the body of another person.

"Sexual Fondling" means the touching of the private body parts of another person (including the genitalia, anus, groin, breast, inner thigh, or buttocks) for the purpose of sexual gratification.

00009

"Trafficking and Trading" means the unauthorized buying, selling, exchange, or transfer of any commodity from any individual (evidence may include an excessive inventory of marketable items). This also includes the unauthorized transfer of funds between offenders regardless of the number of individuals or means utilized to do so. Trafficking and trading also includes other types of violations (e.g., contraband, excessive property, and gambling) not covered in this policy.

"Trained Staff" means staff members who have successfully completed "Conducting a Thorough Protection Investigation" training as provided through the Correctional Training Department curriculum during annual supervisors in-service training. These staff members may be Sergeants or above, unit Security Threat Group Officers, Counsel Substitutes, ACA Accreditation Officers, Field Training Officers, or the USPPC. The appropriate Regional Director's approval must be received for any other staff. A Counsel Substitute working on a related disciplinary may not participate in that investigation.

"Unit Investigative Team" (UIT) means a group of designated individuals on a unit whose function is to investigate all Safe Prisons issues.

"Unit Safe Prisons Program Coordinator" (USPPC) means the unit officer designated by the Warden to assist with the implementation and monitoring of the Safe Prisons Program on the unit.

II.    Prevention:  Designated Unit Staff

TDCJ staff has a duty to protect offenders in their custody. Employees are responsible for reporting immediately and confidentially to the appropriate supervisor any information known to them that may indicate that an offender may be, is being, or has been sexually abused or the victim of extortion. TDCJ staff should investigate any offender who appears to be having difficulty (i.e., offender with black eye seen in the hallway, offender who suddenly becomes very quiet and withdrawn) or requires protection. Employees shall take precautions during investigations to ensure that their actions do not further endanger the offender. Staff shall make sound correctional judgments regarding offender protection based on policy, sound correctional practice, and supervisory guidance.

Each unit Warden shall additionally designate staff to fulfill the following functions and responsibilities.

A.    Screening and Classification

1.    During initial screenings, the UCC shall ask offenders whether they have been sexually abused while incarcerated at any time in the past. When an offender reports that he or she has been a victim of sexual abuse while incarcerated, staff shall immediately make a referral of that offender to the USPPC for possible investigation and referral.

2.    County jail or free world allegations of sexual abuse by an offender during the initial screening should be referred to the OIG. The OIG shall refer to the appropriate agency. The OIG shall document the referral in an IOC which shall be placed in the offender's unit Classification File with a copy forwarded to the OIG Sexual Assault Tracking Coordinator.

3.    During the initial screening process, unit staff shall review the offender's unit Classification File for any documentation that an offender has a history of sexually abusive behavior or sexual abuse victimization while incarcerated. Unit staff shall refer any offender with a history of institutional sexually abusive behavior or history of victimization to Mental Health Staff for an assessment, and the UCC shall make appropriate housing assignments.

**B.**    Duties of the Unit Safe Prisons Program Coordinator

1.    Each unit shall have a USPPC. Based on the level of activity on the unit, serving as the USPPC may be the main duty or one of multiple duties, as determined by the Warden The USPPC shall also be a member of the UIT.

2.    Sexual Abuse Training and Education

    a.    Offender Education

        The Safe Prisons Program Manager shall provide technical assistance and training information to USPPC's for this program, including information for distribution to offenders on prevention, self-protection, avoiding and reporting sexual abuse, and treatment and counseling for sexual abuse. The USPPC shall be responsible to provide Sexual Abuse Awareness training to staff and offenders.

    b.    The USPPC shall ensure that all staff:

        1).    Are trained to recognize the signs of sexual abuse;

        2).    Understand the identification and referral process when an alleged sexual abuse occurs; and

        3).    Have a basic understanding of sexual abuse prevention and response techniques.

3.    The USPPC is responsible for gathering all completed security information regarding possible extortion and sexual abuse and for maintaining a file of all incidents for tracking and documentation purposes. The USPPC shall use the applicable forms attached to this *Plan*, depending on the type of investigation conducted or report prepared.

0ᴖ011

4.   The USPPC shall also be responsible for compiling statistics regarding the demographics of victims and assailants, areas of increased activity, and other similar information.

5.   The USPPC shall review an offender's history as follows:

   a.   Check suspected sexual predators' records for past allegations;

   b.   Check suspected extortionists' records for past extortion, offender assault, trafficking and trading, possession of contraband, and sexual misconduct or abuse cases; and

   c.   Review the offender's institutional behavior and free world history to determine if aggressive.

6.   Tracking Victims and Predators

   a.   Note confirmed extortionists on UCR Screen 07 (only when found guilty of disciplinary offense codes 5.1, 5.2, 5.3, or 15.3).

   b.   The USPPC shall maintain a list of all confirmed extortionists, victims, and predators assigned to the unit (updated daily or as needed dependent on activity level).

   c.   The USPPC shall maintain a list of all offenders being investigated for extortion activity on the unit (updated daily or as needed depending on activity level).

   d.   The USPPC shall maintain the Incident Investigation Form (SPP-10).

7.   *Safe Prisons Plan* Notebook

   The USPPC shall maintain a notebook containing the current copy of the TDCJ *Safe Prisons Plan* and forms, the Safe Prisons Program Training Manual, the Post Order for the USPPC, a list of the unit Victims Representatives and their contact information, and any additional guidance relating to the *Safe Prisons Plan*.

C.   Duties of the Unit Investigative Team (UIT)

   The UIT shall monitor the level of extortion and alleged sexual abuse on the unit for impact on safety and security. The UIT may be comprised of members from the following list (as many members may comprise the UIT as designated by the Warden, based on the level of activity at the unit).

00012

1.  Major/Captain: Responsible for centralizing all information gathered after an incident has occurred. Reviews all documentation and makes recommendations for disposition.

2.  Chief of Unit Classification: Responsible for researching and gathering all background and current institutional information on all offenders involved in an incident.

3.  Unit Safe Prisons Program Coordinator: Responsible for assisting with monitoring and coordination of the UIT investigation.

4.  Security Threat Group (STG) Officer: Responsible for researching and gathering any STG related information on all offenders involved.

5.  Security Supervisor: May be responsible for gathering all initial information, collecting evidence, and generating offense reports.

6.  Mailroom Supervisor: Responsible for searching for illegal activities by monitoring offender correspondence. The mailroom supervisor shall also monitor correspondence of offenders involved in extortion or sexual abuse incidents as directed by the Major/Captain.

7.  Unit Risk Management Officer: Responsible for compiling information regarding suspicious injuries occurring in showers, recreation yards, or showers. This information can be used to determine injuries which may have occurred as a result of extortion or sexual abuse.

8.  Additional staff (i.e., department head, those persons trained to complete Offender Protection Investigations and other similarly qualified persons) as designated by the Warden.

D.  Forensic Medical Examination Representative

If the offender alleges that he has sustained injuries as the victim of a sexual assault while incarcerated, the unit shall inform the offender of the availability of a victims representative to be present with the offender at any forensic medical examination conducted for the purpose of collecting and preserving evidence related to the investigation or prosecution of the alleged assault. The representative may only provide the injured offender with counseling and other support services and with the Sexual Assault Awareness Brochure (SPP-14) and the Rights of Crime Victims (SPP-15), and may not delay or otherwise impede the screening or stabilization of an emergency medical condition. The representative must be approved by the Warden and must be a psychologist, sociologist, chaplain, social worker, or case manager who has completed the TDCJ Sexual Assault Offender Victim Representative training. Each unit Warden shall approve at least two (2) representatives. The USPPC shall maintain a list of the

approved representatives and shall notify the Warden when a representative is no longer available to perform this function. The Forensic Medical Examination Representative is also referred to as the Victims Representative.

III.    Intervention

The following options and procedures shall be used to create a safer and more secure environment for offenders and staff.

A.    Verbal Intervention Between Confrontational Offenders

The first approach to resolving conflict between offenders should be verbal intervention by correctional staff whenever possible. Correctional staff should use the methods taught in training for improving interpersonal communication in a correctional environment. Observation and listening techniques should be used to identify problems and offenders in trouble. Correctional staff should ask appropriate questions that shall enable them to understand the source and seriousness of the problem.

Correctional staff should be aware that offenders who are having difficulty adjusting to the institutional environment or who are experiencing specific problems with other offenders may display verbal and non-verbal signs of anxiety, or even act out aggressively. Correctional staff must recognize and use non-violent crisis intervention techniques. The key components in each of these techniques are listening to the offender and identifying the problem. By utilizing these skills, correctional staff may come to understand that an offender's acting out may or could actually be an indicator of some underlying problem.

B.    Changes in Housing Assignments, Work Assignments, or Work-Shift Hours

In order to alleviate tension between offenders, changes may be made to offender housing assignments, work assignments, or work-shift hours. This option is particularly effective when an offender is having a specific problem with another offender in his housing area or work detail that can be addressed by such changes.

1.    Unit administration (Warden or Assistant Warden, Major, Captain, Shift Supervisor, or Chief of Unit Classification, if designated by the Warden) is authorized to alter an offender's housing assignment if the change does not involve a change in custody. In making housing assignments, consideration is given to characteristics such as:

a.    Criminal history;

b.    Criminal offense (type and seriousness), sentence length, and amount of time completed on sentence;

c.    The offender's age and number of prior adult incarcerations;

d.    Violent or passive tendencies;

e.    Criminal sophistication;

f.    Offender enemies;

g.    Homosexual (both active and passive) tendencies;

h.    Physical characteristics such as height and weight;

i.    STG affiliation;

j.    Current institutional adjustment, as reflected in the offender's disciplinary record, and

k.    Special housing requirements.

2.    An offender's work assignment or shift should be changed if the change is necessary to provide the offender with an appropriate level of protection. If the change would significantly affect the other aspects of the offender's *Individualized Treatment Plan* (ITP), recommendation shall be made to the UCC for their review prior to the job or shift change. Offenders requiring UCC review under this procedure shall be given an administrative lay-in and shall not return to work until a decision is reached by the UCC. These solutions may be implemented in response to an offender grievance, an I-60 request "Inmate Request to Official", and a report from a work supervisor or correctional staff in the work or housing area, observation by administration, or other less formal communication. If a correctional officer becomes aware of any unusual incident that occurs in the workplace, he must report it immediately to the workplace supervisor.

C.    Placement of Aggressive/Assaultive Offenders in Administrative Segregation or Change of Custody Due to Major Disciplinary Offenses

A change of custody for the offender-aggressor in accordance with the *Disciplinary Rules and Procedures for Offenders* and *Classification Plan* is also an option. Although a change in custody cannot be effected by unit administration, it may be done by the UCC without further approval unless it involves placing the aggressor in Administrative Segregation (maximum custody). Assignment of an offender to Administrative Segregation must be made in accordance with the *Administrative Segregation Plan*. Removing the aggressor not only protects the offender specifically found to be at risk, but other offenders in the housing area as well. Additionally, placing the offender-aggressor in a

more restrictive custody classification (G4, G5, or Administrative Segregation) shall limit his opportunity to victimize other offenders and encourage him to modify his aggressive behavior.

D.    Transfer to Another Unit

Although a unit transfer is often sought by offenders, there are several important factors to consider prior to making such a recommendation. Foremost among these factors is the offender's motive in requesting the transfer. It is not uncommon for offenders to seek a unit transfer for gang-related or other illicit purposes. Further, even when it is clear that an offender is in fact seeking transfer for his own protection, the reviewing authorities must evaluate whether the offender would benefit from a transfer or would simply find himself in the same situation on another unit. Therefore, a decision to recommend a unit transfer is made only after the investigation uncovers objective evidence that substantiates the offender's allegations of danger at that specific unit.

E.    Assignment to Safekeeping Status

Safekeeping is a status that permits the unit to house vulnerable individuals and other potential victims together, but separate from more aggressive offenders. While housed separately, Safekeeping offenders may still participate in work, educational, and other activities with other general population offenders. However, Safekeeping offenders shall be separated from other general population offenders during recreation, showering, and housing assignment, to provide them with greater safety. Safekeeping status is reserved for offenders who require separate housing in the general population because of substantiated threats to their safety due to a potential for victimization, (i.e., enemies in the offender population, a history of homosexual behavior, or other similar reasons).

Safekeeping status is dissimilar to the Protective Custody category of Administrative Segregation because offenders in Safekeeping status go to work, school, and other activities with general population offenders. Offenders in Safekeeping status are assigned custody designations appropriate to the institutional adjustment and the level of security supervision required, i.e., Safekeeping P2 through P5 and PJ. Safekeeping offenders are assigned to cell housing that is specifically designated for Safekeeping status offenders in their assigned custody. Safekeeping housing is commensurate with specific safety needs of the offenders assigned there, and when necessary, Safekeeping offenders may be single-celled.

Of paramount concern is the careful monitoring of offenders who are placed in Safekeeping and thorough investigation of those offenders who are considered for Safekeeping status. It is not uncommon for aggressive or opportunistic offenders to fabricate a need for Safekeeping status in order to gain access to the Safekeeping housing area and the vulnerable offenders housed therein. For this

reason, while it is the goal of TDCJ to afford any offender who requires this degree of protection access to Safekeeping status, thorough investigation of any offender's request for Safekeeping is imperative.

F.    Assignment to Administrative Segregation Protective Custody

Assignment to Administrative Segregation Protective Custody is a maximum custody assignment reserved for those offenders who require maximum supervision and the highest degree of protection available at all times due to threats of harm by others. It is the highest degree of protection available in TDCJ and is, by necessity, the most restrictive of the options.

In Protective Custody, the offender's safety is the principal concern and some privileges are necessarily sacrificed. All Protective Custody offenders are single-celled in housing specifically designated for Protective Custody offenders and have a security escort whenever they leave their assigned cells. They do not participate in work or educational programs, and are ineligible for some privileges. They are not showered, recreated, or otherwise allowed in the close proximity to offenders in any other Administrative Segregation status. Because of the fewer opportunities and privileges available in Protective Custody, careful consideration is given prior to placement in this status. All assignments of offenders to Administrative Segregation Protective Custody must be made in accordance with the *Administrative Segregation Plan*.

G.    Interstate Corrections Compact Transfer

The most extreme measure which can be taken for an offender requesting protection is recommending the offender for transfer to another state under the Interstate Corrections Compact. This type of transfer involves a one-for-one trade of offenders between states. It is most useful in circumstances where the offender is having problems with other specific groups of offenders and no other means of protection is available, because it removes him completely from contact with those individuals. This type of transfer is usually made when it is believed that an offender's need for protection cannot be met in any situation that would house the offender within the TDCJ. In cases where an offender is vulnerable or weak, interstate transfer may not be appropriate since interstate transfer may not alter his vulnerability. For that type of offender, the lesser measures of Safekeeping or Protective Custody are more appropriate and more likely to protect him from harm.

The UCC may recommend the offender for an Interstate Corrections Compact transfer. The *Classification Plan* provides specific instructions as to the mechanics of this decision.

H.    Special Populations:

1.    Offenders younger than 18 are considered to be children or minors for purposes of reporting and investigating child abuse. Offenders in the Youthful Offender Program (YOP) who require protection shall be handled in accordance with the YOP Manual. Any deviation from those procedures must be approved prior to implementation by the appropriate Deputy Director.

2.    An investigation of alleged abuse, neglect, or exploitation of a disabled or elderly person is governed by Texas Board of Criminal Justice Rules, 37 Texas Administrative Code, sections 153.1 through 153.7.

I.    Extortion

If an offender is requesting a protection option as a result of extortion from another offender, the investigation of the extortion shall be handled in accordance with the extortion investigation, disposition of extorted funds, and disciplinary instructions of this *Plan*. The request for protection shall be handled in accordance with the investigative requirements for protection requests contained in this *Plan*.

J.    Sexual Abuse Allegations

An offender may report an alleged sexual abuse incident to any employee. Any offender who alleges that he or she has been sexually abused shall be physically separated from their alleged aggressor. Sexual abuse allegations against staff shall be handled in accordance with PD-29, "Relationships and Sexual Misconduct with Offenders," in addition to the requirements of this *Plan*. Offenders who make allegations of sexual assault shall be referred for a medical examination immediately. Offenders whose allegations do not rise to the level of sexual assault but otherwise meet the definition of sexual abuse may be referred to medical as appropriate and shall have their protection needs addressed as described below.

1.    Referral: All alleged sexual abuse incidents shall be reported to the Emergency Action Center (EAC) and the OIG 24 hours a day.

a.    *Normal Business Hours.* During normal business hours, staff shall promptly advise the shift supervisor of any offender who has been, or claims to have been sexually abused. The supervisor shall ensure all appropriate staff is contacted, including the Unit Warden, OIG, EAC, Health Services Staff, and the USPPC. The Shift supervisor shall ensure that the alleged offender victim is provided a copy of the Sexual Assault Awareness Brochure (SPP-14) and the Rights of Crime Victims (SPP-15). The USPPC shall

notify the Offender Victim Representative as soon as possible in the event the offender desires their assistance.

b. *Non-business Hours.* Staff shall immediately notify the shift supervisor, who shall notify Health Services Staff, the Duty Warden, EAC, and the OIG. The shift supervisor shall determine appropriate housing for the offender who makes sexual abuse allegations. The shift supervisor shall promptly inform the duty warden, as well as the USPPC. The shift supervisor shall ensure that the alleged offender victim is provided a copy of the Sexual Assault Awareness Brochure (SPP-14) and the Rights of Crime Victims (SPP-15). The USPPC shall notify the Offender Victim Representative as soon as possible in the event the offender desires those services.

2. Services and Responsibilities

a. *Medical.* The shift supervisor shall ensure the offender is escorted to medical for examination, documentation, and treatment of injuries arising from an alleged sexual assault. The shift supervisor shall contact the OIG investigator so that the OIG investigator may ascertain whether a rape kit should be performed by trained medical personnel. The medical department shall provide care and treatment in accordance with Health Services Policy G-57.1. Additionally, the shift supervisor shall make arrangements to have a Victims Representative present at the time of the exam if requested by the offender.

NOTE: The OIG Investigator shall make all investigative, crime scene and evidence handling decisions in accordance with established OIG policy, procedures, and guidelines.

b. *Psychological.* Health Services shall be responsible for crisis counseling, coping skills, suicide prevention, and mental health counseling as needed. The UCC shall refer offenders who have been involved in an alleged sexual abuse incident to Mental Health Staff for an evaluation and possible treatment.

IV. Investigation

A. Requests for Offender Protection

1. Unit Level Processing of Requests for Protection from other Offenders

a. An Offender Protection Investigation can be initiated by anyone who has knowledge that an offender may be in need of protection.

his circumstances are such that the offender needs protection from other offenders.

1). Any objective evidence discovered during an investigation that would indicate an offender is being extorted or victimized. Examples of objective evidence include visible physical injuries, medical reports, commissary account records, witness accounts, and other similar evidence.

2). Offender's physical size (small stature, frail, weak, etc.).

3). Mental/physical impairments (handicapped, low IQ, etc.).

4). Age/first-time offender.

5). Sexual orientation (claims of homosexuality should be corroborated by permanent records, disciplinary reports, or any other evidence to support homosexual activity).

6). Determine if the problem is unit or geographic specific. If an offender's alleged problem is confined to a specific individual, alternatives such as cell changes or unit transfer might alleviate the situation.

7). Look for any factors that would preclude an offender's placement into safekeeping (i.e., it would not be prudent to recommend safekeeping for an offender who has a felony conviction for sexual assault of another offender).

8). Offender's previous history in safekeeping status on prior commitment.

6. SCC Review

a. The unit shall fax a copy of the Offender Protection Investigation Form to the SCC stating why the Safekeeping or Protective Custody is indicated. The SCC shall review the Offender Protection Investigation Form and concur or non-concur with the UCC's decision.

b. SCC Decision

1). The SCC's decision shall be documented via email and forwarded to the appropriate unit within ten (10) working days of receipt.

2)    If the SCC does not concur with the UCC's recommendation, the reason for non-concurrence must be detailed and specific ("insufficient evidence" is not detailed or specific). The non-concurrence must be immediately communicated to the UCC along with a request for additional information to assist the SCC in understanding the UCC's recommendation.

3).    If the SCC continues to disagree with the UCC's recommendation, after additional information has been received, the unit may appeal the decision through the Departmental Review Board (DRB) process, which has final authority with regard to all staff appeals of decision relating to offender classification.

c.    Placement in or deletion from Safekeeping and Protective Custody shall be recorded by the SCC in the offender's central files and computer records.

d.    Offenders may appeal Classification decisions by filing grievances in accordance with the AD-03.82, "Offender Grievance Procedures."

7.    Removal from Protection Status

a.    Offenders in Protective Custody shall be reviewed for release from this status in accordance with the review schedule and standards for release outlined in the *Administrative Segregation Plan* or the *Classification Plan* as appropriate. Additionally, offenders may submit a written report to the Warden or his designee at any time asking for release to the general population.

b.    Offenders requesting removal from Safekeeping must submit a written request for release from Safekeeping. Such requests do not require investigation and shall be reviewed at the discretion of the UCC. An offender's request to be removed from Safekeeping shall not be the sole reason considered for release. The UCC shall not recommend that an offender be removed from Safekeeping if the need for protection that caused the offender to be placed in Safekeeping still exists. The unit shall provide the SCC with a copy of the offender's statement explaining why Safekeeping is no longer needed and the unit's justification for removal. The SCC maintains independent discretion to review and remove Safekeeping from those offenders identified as predators or extortionists.

1).     The UCC shall make the recommendation as to the removal or retention on a "Removal from Safekeeping Status to General Population" form. If the UCC recommends removal from Safekeeping, this form shall be forwarded to the SCC for a final decision. If the UCC votes to retain the offender in Safekeeping status, the form is simply filed in the offender's unit Classification Folder.

2).     No offender is to be physically removed from Safekeeping status housing unless the SCC has approved the removal of the offender from the Safekeeping status.

B.     Guidelines for Investigation of Suspicious Activity by Offenders

1.     Initiation of the Investigation

a.     Monetary Extortion

In general, offenders may not receive gifts or fees from other offenders. A deposit from one offender to another may be made only by transfer from one account to another Inmate Trust Fund (ITF) account and must have unit administration approval. Approval must be obtained for each offender to offender account transaction even if the depositing offender has made previous deposits to the receiving offender's account. Deposits from one offender to another, processed through an outside source, shall be considered a violation of the Agency "Trafficking and Trading Rules" regardless of whether accepted for deposit or received by the ITF Department. Suspected violations shall result in an investigation.

If unit staff becomes aware of suspicious offender monetary activity, they may request, through the Warden, that an investigative hold be placed on an offender's ITF account. Investigative holds shall be handled in accordance with AD-14.62, "Guidelines for Handling Offender Funds, Accounts and Transactions." Only the Warden and the Inspector General (or his designee) may request an investigative hold. During the investigation, the investigative hold shall be reviewed every 90 days by the Warden. The offender may appeal the investigative hold through the Offender Grievance Procedure. If the suspicions are not confirmed by the investigation, the hold on the offender's account shall be released.

b.     Sexual Extortion

If unit staff become aware or suspect that an offender is being sexually victimized, correctional staff shall notify a supervisor who

shall promptly begin an offender protection investigation and immediately notify OIG. Initiation of an investigation shall not require a formal request for protection from the offender suspected of being victimized.

c.   Commissary/Property Extortion

If unit staff become aware or suspect that an offender is being extorted for property, an offender protection investigation shall begin promptly, using AD-03.72, "Offender Property," as a reference.

d.   Offender Business Notification

Unit staff shall not "authorize" individual offender businesses, but shall instead ensure that the offender's stated business does not fall within the prohibitions contained in the Offender Disciplinary Rules and Procedures.

2.   If the suspicions are confirmed, disciplinary action shall take place in accordance with the Disciplinary/Prosecution section below and criminal charges may be filed by the OIG.

C.   Sexual Abuse Incidents

1.   Unit Staff shall conduct an offender protection investigation and an administrative investigation in accordance with this *Plan* and AD-02.15 "Operation of the Emergency Action Center and Reporting Procedures for Serious or Unusual Incidents" for each alleged sexual abuse incident, as appropriate. Prior to interviewing the alleged suspect, the senior on-duty correctional supervisor shall consult an OIG investigator to determine if a criminal investigation is warranted. The investigation may result in the imposition of an offender disciplinary offense.

2.   Each alleged sexual abuse incident shall be referred to the OIG by the senior on-duty correctional supervisor. OIG shall conduct a criminal investigation into sexual assault allegations as per established OIG investigations protocol and procedures.

3.   Alleged violations of PD-29, "Relationships and Sexual Misconduct with Offenders," shall be investigated in accordance with PD-22, "Guidelines for Employee Disciplinary Actions," in addition to appropriate investigative requirements of this *Plan* and the OIG. Criminal offenses must be investigated prior to an administrative investigation.

4.   If OIG conducts a criminal investigation, OIG staff shall coordinate evidence collection and witness statement collection.

5.     OIG investigators shall determine when a rape kit should or should not be utilized, using the 96-hour rule as a guide.

6.     Sexual abuse that has been alleged to have happened while the offender was incarcerated in a non-TDCJ or Agency facility shall be referred to the OIG. The OIG shall conduct the initial interview and contact the non-Agency official (e.g. county sheriff) with the facts of the allegation. The OIG investigator shall complete an Inter-Office Communication (IOC) describing his actions and submit the IOC to the Unit Classification Chief for filing in the offender's classification file and a copy to the Sexual Assault Tracking Coordinator.

V.     Discipline/Prosecution

A.     Extortion Activity

1.     The OIG shall always be contacted regarding identified extortion activity when a felony criminal offense (i.e. extortion of $1500.00 or more) has occurred. Otherwise, unit staff shall handle the investigation of extortion activity.

2.     Offender Disciplinary Action/Prosecution

a.     Offenders who extort or who are involved in extortion, as defined above, shall be charged with a Level I disciplinary offense as follows:

1).     Code 5.1: appropriation of currency by coercion or violence, with intent to deprive the owner of the currency.

2).     Code 5.2: appropriation of property by coercion or violence, with intent to deprive the owner of the property.

3).     Code 5.3: demand of an action by coercion or violence.

4).     Code 15.3: misrepresentation of personal information about oneself or one's intentions to another person; use of false information with the intent to harm or defraud another person; or appropriation of currency or property by deception.

b.     Criminal prosecution may also be sought if circumstances are deemed serious enough by the OIG.

c.   Monetary Extortion

1).   Confirmed violations of deposits between offenders shall result in disciplinary action against any offenders involved in any unauthorized transactions at the discretion of the unit Warden or designee, whether depositors or recipients. Administrative action taken may include forfeiture of any funds received.  If an offender reports unauthorized transactions that are afterward determined to be in violation of the stated policy and voluntarily signs a waiver for forfeiture of the funds received, disciplinary action may be taken at the discretion of the unit Warden after conclusion of the investigation.

2).   A notice is included on the back of the ITF-16 form (Inmate Trust Fund Deposit Slip) identifying the law against tampering with a governmental record.  When these forms are used to extort, this law may be used to prosecute offenders who are involved in the extortion, as well as to prosecute those individuals who assisted in the extortion. Other applicable laws may be utilized for prosecution in conjunction with the above-referenced law.

3).   If an offender is found guilty of extorting money that has been deposited in his trust fund account, the Disciplinary Hearing Officer (DHO) shall enter the amount of money the offender stands to forfeit on the Disciplinary Report and Hearing Record.  The forfeited money shall be referenced in the body of the disciplinary report, not in the money damages section as the forfeiture is not punishment or reimbursement for damaged property.

4).   Forfeiture of funds is not an available disciplinary punishment.

d.   Sexual Extortion

1).   If an offender is found guilty of extorting sexual favors (Disciplinary Offense Code 5.3) or sexual abuse (Disciplinary Offense Code 7), he may be placed in Administrative Segregation as a threat to other offenders. Such recommendations for placement shall be in accordance with the *Administrative Segregation Plan.*

2).   If enough evidence for a criminal prosecution exists, an offender found guilty of sexual assault, as an already

incarcerated felon, faces a minimum of five (5) to 99 years or life sentence due to a prior conviction.

   e.   Commissary/Property Extortion

      1).   If an offender is found guilty of extorting property or commissary (Disciplinary Offense Codes 5.1 or 5.2), he may also face criminal prosecution for extortion.

      2).   Offenses such as Level II, disciplinary offense code 16, "Possession of Contraband", may also apply.

   f.   If an offender is found guilty of extortion, he may be retained in G5 custody for up to 24 months.

3.   Employee Disciplinary Action/Prosecution

If an employee is found to be involved in extortion, the following shall apply:

   a.   Employees may be subject to disciplinary action in accordance with PD-22, "General Rules of Conduct and Disciplinary Action Guidelines for Employees," and

   b.   Criminal prosecution of the employee may be sought.

4.   Disposition of Extorted Funds

   a.   Upon sustaining a disciplinary case, the Warden shall complete the Request for Forfeiture/ Confiscation of Funds (SPP-09) and send to the Assistant Director for Commissary and Trust Fund, along with a copy of the disciplinary report. The IOC shall request the extorted funds be forfeited from the offender's ITF account.

   b.   The forfeited funds shall be placed in the TDCJ "Forfeiture Fund" and held for a minimum of two (2) years so that any challenges to the transfer by the offender or orders from a court in connection with the extortion case can be processed. After two (2) years, the funds shall revert to the Texas General Revenue Fund.

   c.   If extortion takes place, the offender forfeits title to the funds. The funds do not "revert" to the sender and TDCJ is not obligated to restore the money to the sender.

d.      If a court order is issued requiring restoration of the funds to the sender, the funds may be restored after review by the Office of the General Counsel.

e.      Forfeiture of funds is not an available disciplinary punishment.

B.      Sexual Abuse

1.      The OIG shall inform the Safe Prisons Program Manager when a suspect has been successfully prosecuted.

2.      The Safe Prisons Program Manager is responsible for ensuring that the rights of the victim are observed. The Safe Prisons Program Manager shall be responsible for providing the offender victim of sexual assault with the proper notifications regarding the status of his assailant.

3.      If an employee is found to be involved in a sexual abuse incident, PD-29, "Relationships and Sexual Misconduct with Employees," requires that violations of criminal law shall be referred by the OIG to the appropriate District Attorney for criminal prosecution. The employee may also be subject to disciplinary action in accordance with PD-22, "General Rules of Conduct and Disciplinary Action Guidelines for Employees."

VI.  Recordkeeping and Monitoring

A.      Forms:  The following contains a description of common forms and records utilized by the Safe Prisons Program. These forms shall be provided as part of the Safe Prisons Program Notebook and as part of this *Plan*.

1.      Offender Protection Investigation Log (SPP-01).  The Chief of Unit Classification or the Chief's designee shall be responsible for tracking these requests. Each request shall be tracked by recording on the Offender Protection Investigation Log the date the request was received; the action taken; and the final disposition. Extortion, Offender Investigation, and Sexual Abuse checklists, when applicable, shall be utilized by staff when conducting an investigation. This document should be maintained in the classification department for reference and follow-up by the Chief of Unit Classification.

2.      Offender Protection Investigation Summary (SPP-02)
Offender Protection Investigation Form (SPP-02A)
Offender Protection Witness Statement/Report of Interview (SPP-02B). An Offender Protections investigation shall be conducted by appropriate administrative staff.  Once the investigation form and summary are completed, the completed investigation and summary is provided to the Major for review and signature.  It is then forwarded to the unit's

0027

Classification department where it shall be logged in by the Chief of Unit Classification or designee on the Offender Protection Investigation Log. The offender shall then appear before the next scheduled UCC or ASC as appropriate. Copies of the completed investigation should be maintained in the Offender Unit Classification Folder. Copies of these forms shall also be maintained in the Safe Prisons folder.

3.    Extortion Investigation Checklist (SPP-03). The appropriate investigation staff should utilize this form as a guide for completing an investigation into allegations that extortion has taken place. This checklist must be attached to the Offender Protection Investigation Form when applicable.

4.    Offender Protection Investigation Checklist (SPP-04). This form is to be consulted by the appropriate investigation staff as a guide for completing an offender protection investigation. This checklist must be attached to the Offender Protection Investigation Form in addition to other checklists as applicable.

5.    Sexual Abuse Investigation Checklist (SPP-05). This form is to be consulted by the appropriate investigation staff as a guide for completing an investigation into the allegation that a sexual abuse has taken place. This checklist must be attached to the Offender Protection Investigation Form as applicable.

6.    Subsequent Offender Interview (SPP-06). This form is to be completed by the supervisor for any allegation made by an offender which is determined by the supervisor to be of a duplicative nature. The Unit Major should review this form and compare the information provided by the Major to previous investigations or Classification Committee action and determine if a full and complete investigation is warranted.

7.    Potential Predator Alert (SPP-07). This form is to be prepared by the USPPC. The form should be maintained in the offender's Extortion File and a copy should be provided to the unit Major(s) to raise staff awareness of the presence of a potential predator on the unit. Potential predators are defined as those who have a history of extortion or sexual abuse.

8.    Incoming Chain Interview (SPP-08). All new in-coming "chain" offenders, excluding returning "chain," should be interviewed by the STG Office and the USPPC upon arrival on the Unit. A copy of this sheet should be provided to the Classification Committee in order to facilitate classification of this offender. This form shall be maintained in section 3 of the Offender Classification folder.

9.    Request for Forfeiture/Confiscation of Funds (SPP-09). If an offender is found guilty of extorting money that has been deposited in his trust fund

account, the DHO shall enter the amount of money the offender stands to forfeit on the Disciplinary Report and Hearing Record. The forfeited money shall be referenced in the body of the disciplinary report, not in the money damages section, as the forfeiture is not punishment or reimbursement for damaged property. The unit Warden or OIG representative shall submit this form to the Inmate Trust Fund to request the forfeiture of funds.

10. Incident Investigation Form (SPP-10). This form is to be completed by the USPPC when investigating potential predators and victims on the facility. This form is maintained as a part of the offender Safe Prisons folder and should be kept in the USPPC's Office and shall transfer to the unit of assignment when the offender leaves.

11. USPP Offender Profile (SPP-11). This form is to be completed by the USPPC when conducting investigations related to extortion / sexual abuse on the facility. This form is maintained as a part of the offender Safe Prisons folder and should be kept in the USPPC's Office and shall transfer to the unit of assignment when the offender leaves.

12. Monthly Safe Prisons Report Meeting Flow Sheet (SPP-12). The UIT shall meet at least quarterly (or more frequently as designated by the Warden, based on the level of the activity at the unit) to discuss the unit's extortion activity. The UIT meetings may be held in conjunction with STG or Drug Enforcement Task Force meetings. The Safe Prisons Incident Log shall be reviewed. Minutes shall be taken of the meeting and kept confidentially on file permanently in the Warden's office or a place designated by the Warden. This form is available as an E-Form on the mainframe.

13. Notice to Offenders (SPP-13 and SPP-13S). This document, in both Spanish and English, is to be posted on all bulletin boards on the facility that are readily available to the offender population.

14. Sexual Assault Awareness Brochure (SPP-14). This brochure is available in both Spanish and English is to be handed to all offenders during the unit orientation process and to the offender who alleges a sexual assault at the time of investigation. *(Prison Store Product # FN760 for English, FN760S for Spanish)*

15 Rights of Crime Victims (SPP-15). This document in both Spanish and English, in addition to the Safe Prisons Sexual Awareness Brochure (SPP-15) is to be handed to the offender who alleges a sexual assault at the time of the investigation.

16. Offender Notification of Business (SPP-16). This document is to be completed by an offender who intends to conduct a business for financial remuneration. Once completed, the original form will be maintained in the

Safe Prisons folder with a copy provided to the unit Classification File and Victims Services.

17.   Extortion Correspondence Review Form (SPP-17).   This document is utilized by the USPPC, STG Officer, or mailroom staff when the content of correspondence appears to contain some indication of extortion or sexual abuse.   Upon completion, the form shall be forwarded to the Mailroom Supervisor for appropriate action.

B.   Tracked Offenders

1.   Each USPPC shall keep a file on victims, predators, and all offenders who are being investigated for extortion activity on the unit.   The files may be comprised of the following, as appropriate.

a.   Extortion Checklist (SPP-03);

b.   Sexual Abuse Checklist (SPP-05);

c.   Copies of UCR Screens;

01: Indicating Potential Victim

06: Showing cases for extortion, assaults, sexual abuse, trafficking and trading

07: Notation of offender as having received a case for extortion, or Potential Sexual Predator or Potential Sexual Victim Codes (PD, PP, SV)

d.   Offender Protection Investigation Summary and Forms (SPP-02; SPP-02A; SPP-02B);

e.   Safe Prisons Investigation Form (SPP-10);

f.   USPP Offender Profile (SPP-11); and

g.   Any additional reports or evidence.

2.   When a tracked offender is sent to another unit of assignment, the safe prisons file shall be sent to the receiving unit in the same manner as the STG files.   The USPPC may retain copies of information as necessary for pending litigation and other similar situations.

Safe Prisons Program Office (SPPO)

1.  The Safe Prisons Program Manager shall compile a report utilizing information contained in the monthly/quarterly unit safe prisons report flow sheets, unit consolidated activity report, and EAC statistics in order to analyze and evaluate trends in extortion, sexual abuse, and other aggressive offender behavior.

2.  The Safe Prisons Program Manager shall schedule, plan, and complete a report to the Safe Prisons Council regarding Safe Prisons Program Activity during the previous month. The Safe Prisons Program Council shall make recommendations to the CI Division Administration for program improvements.

3.  The Safe Prisons Program Manager shall provide a report to the CI Division leadership during the monthly CI Division meeting regarding activities of the Safe Prisons Program Council.

4.  The SPPO and the OIG shall monitor the incidence of alleged sexual assault and provide statistics regarding the frequency of reports. The SPPO shall additionally monitor and provide statistics regarding the frequency of alleged sexual abuse not constituting sexual assault.

5.  A list of Potential Sexual Predators and Potential Sex Victims shall be developed by the SPPO based on multiple reports of alleged sexual abuse incidents naming the same subject as the victim or suspect.

6.  The SPPO shall enter a Potential Sexual Predator (PP) or Potential Sex Victim (SV) code on UCR screen 07 for each offender identified by the SPPO as a potential predator or potential sex victim. This list may be accessed for all PP or SV codes on the facility by INFOPAC report IUCR251.

7.  For offenders found guilty of sexual abuse disciplinary violations (disciplinary offense codes 05.3 or 07) Sexual Predator Code (PD) shall be entered by the SPPO on the UCR screen 07. The victim in this case shall also have a Sex Abuse Victim (SV) code entered on UCR screen 07 by the SPPO. This list can also be accessed by the unit through INFOPAC report IUCR251.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM
Offender Protection Investigation Log

| Offender Name | TDCJ # | Request from Classification (C); or Security (S) | | Forwarded To Major | | Investigation Completed | | Investigation To Classification | | Offender Signed Waiver Y / N | UCC Review Date Decision Review Code | Forward To OIG | | Date Recommendation Sent to SCC | SCC Decision and Date | Allegation Involved Extortion (E) Sexual Assault (S) Violence (V) | Final Disposition |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Date | Time | Date | Time | Date | Time | Date | Time | | | Y / N | Date | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

00032

SPP-01 (1-18-2005)

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM
Offender Protection Investigation Summary

*The Offender Protection Investigation Summary SPP-02 is completed as a requirement of the Safe Prisons Plan and is utilized by the Unit Classification Committee (UCC) to forward the results of the investigation to the State Classification Committee (SCC) when SCC action is required due to a request for protection by an offender. The Offender Protection Investigation Form (SPP-02A) provides the specific details of the investigation and the investigator's summary. In the event that written witness statements or reports of an interview are needed the Offender Protection Witness Statement/Report of Interview (SPP-02B) is used to record necessary information and may be used for both offender and employee witness statements.*

*The Offender Protection Investigation Forms shall be completed in their entirety unless an offender signs a waiver that no further action is to be taken concerning his request for protection. All information on the investigation form must be typed or printed legibly with all questions answered. In instances where the question or information blank does not apply to the offender or the investigation in progress the supervisor completing the investigation, is to record "none" or "N/A" for not "applicable".*

<u>FORWARD THE COMPLETED FORM TO THE MAJOR FOR REVIEW AND FORWARD TO THE UNIT CLASSIFICATION OFFICE</u>

Offender Name: _____     TDCJ #_____     Unit: _____

Briefly describe the alleged protection situation: _____
_____
_____
_____
_____

Is the complaining offender a member of a gang or security threat group?   ☐ YES   ☐ NO

☐ Suspected   ☐ Confirmed   ☐ Claims membership   **What group?**_____

| List other Offender involved in the alleged incident: | | | |
|---|---|---|---|
| Offender Name | TDCJ # | Nature of Involvement | Name of STG/gang if any |
| | | | |
| | | | |
| | | | |
| | | | |

Were weapons used?   ☐ YES   ☐ NO   If yes, what type of weapon(s) were used?_____
_____

Describe any medically verified injuries: _____
_____
_____
_____

Complaint was corroborated by:   ☐ Staff   ☐ Offender Witness   ☐ Physical Evidence   ☐ Not Corroborated

List any previous action done to alleviate the need for protection: _____
_____

UCC Action and Justification(s):_____
_____

UCC Chairperson:_____          Date of UCC Review:_____

Date forwarded to SCC (if appropriate):_____

SPP-02 (1-1-2005)

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM
Offender Protection Investigation Form                    Page 1

Offender Name_____ TDCJ #_____ Unit_____

Current Custody_____ Current housing location_____ Current work assignment_____

Age:_____ Height:_____ Weight:_____ lbs. Race:_____

Date and Time the Incident Occurred: _____

Where did the most recent incident occur? _____

Date and Time the Investigation began:_____

When did staff become aware of a possible endangerment situation?  Date _____ Time _____

How was this information reported?   *(check one)*   ☐ I-60 from Offender   ☐ Verbally by offender   ☐ Staff
      ☐ Other (explain)_____

Name of person reporting the situation *(if other than offender being threatened)*:_____

Was situation reported to the Office of Inspector General?   ☐ YES   ☐ NO  *(If Yes, provide the date and time the report was made)*:_____

Name of Office of Inspector General Investigator contacted:_____

Have there been similar incidents before?   ☐ YES   ☐ NO   When? _____

Has offender previously been assigned to Safekeeping or Protective Custody?   ☐ YES   ☐ NO

Prior endangerment request? ☐ YES   ☐ NO *(If Yes, enter date of most recent request)* _____

To whom was prior endangerment reported?_____

What was the outcome/action taken as a result of the prior request:_____

Was any physical or written evidence presented?   ☐ YES   ☐ NO   *(If Yes, please describe)*_____
_____
_____

Were any staff members interviewed? ☐ YES   ☐ NO *(If No, explain why not)* _____
_____

*(If Yes, List staff witnesses, statements or reports of interviews should be attached as applicable)*:_____
_____
_____
_____

Were any other offenders interviewed? ☐ YES   ☐ NO *(If No, explain why not)* _____
_____

*(If Yes, List offender witnesses, statements or reports of interviews should be attached as applicable)*:_____
_____
_____

SPP-02A (1-1-2005)

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM
Offender Protection Investigation Form Continued                    Page 2

INVESTIGATOR'S SUMMARY: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

---

## OFFENDER WAIVER STATEMENT

I AM REQUESTING THAT NO FURTHER ACTION BE TAKEN BY THE _____ UNIT REGARDING MY REQUEST FOR: *(CHECK ONE)* ☐ SAFEKEEPING    ☐ ADMINISTRATIVE SEGREGATION PROTECTIVE CUSTODY ☐ TRANSFER     ☐ OTHER _____.    THE SITUATION HAS BEEN RESOLVED AND I NO LONGER REQUIRE PROTECTION/TRANSFER.  I UNDERSTAND THAT THE ALLEGATIONS I MADE WHICH RESULTED IN THIS INVESTIGATION WILL NOT BE INVESTIGATED AGAIN UNLESS THERE IS NEW EVIDENCE THAT SHOULD WARRANT ANOTHER INVESTIGATION.

BY MY SIGNATURE BELOW, I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THE ABOVE STATEMENT AND I AM SIGNING THIS STATEMENT OF MY OWN FREE WILL.

_____       _____       _____
           OFFENDER SIGNATURE                        TDCJ #                      DATE

---

INVESTIGATOR'S SIGNATURE: _____ DATE:_____

DATE AND TIME REVIEWED BY MAJOR OR DESIGNEE:_____

MAJOR OR DESIGNEE SIGNATURE: _____

cc:     Offender Unit File, SCC File

SPP-02A  (1-1-2005)

09035

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM
Offender Protection Witness Statement/Report of Interview

The following witness statement or report of interview form was completed in conjunction with an offender protection investigation concerning the below referenced offender:

Offender Name _____   TDCJ # _____   Unit: _____

Witness Name: _____   Title/TDCJ #: _____

Date of Interview/Statement: _____   Time of Interview/Statement: _____

Report Type:  ☐ Witness Statement   ☐ Report of Interview *(check one)*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____          _____
Witness Signature                 Date

_____          _____
Investigator's Signature          Date

Attach to the **Offender Protection Investigation Form** concerning the above referenced offender and forward to the appropriate authority.

SPP-02B (1-1-2005)

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM
Extortion Investigation Checklist

| Check when Complete | Responses/Comments | Issues |
|---|---|---|
| | | 1. Can you identify the offenders that are extorting you? |
| | | 2. Could you identify the offenders from a video or photo lineup? |
| | | 3. Are the offenders gang-related? If yes: <br> a. What gang are they associated with? <br> b. Are you gang-related? <br> c. What is their name/AKA? |
| | | 4. How have you paid the offenders (either money, commissary, personal property, sexually?) |
| | | 5. Can you identify all participants that are involved in extortion? |
| | | 6. How have they been extorting from you? |
| | | 7. How many offenders are involved? |
| | | 8. Have they gained money from you via your family members or friends? |
| | | 9. Have they gained money from your trust fund account? |
| | | 10. Have they physically assaulted you? (verify if they have been to medical or have visible injuries) |
| | | 11. Are they extorting other offenders? |
| | | 12. Can you identify other offenders being extorted? |
| | | 13. Has anyone witnessed the extortion (staff or offenders? |
| | | 14. Do you know these (extorting) offenders from County Jail? |
| | | 15. Did you pay protection to these offenders (if gang related) in the County Jail? |
| | | 16. Have you reported this extortion to anyone else? |
| | | 17. Investigator: House the offender in a safe manner. |
| | | 18. Investigator: Complete a shakedown of identified offenders, and complete the Offender Protection Investigation Form. |
| | | 19. Safe Prisons Unit Coordinator: Verify offender's trust fund account. |
| | | 20. Safe Prisons Unit Coordinator: Review trust fund accounts of the identified extortion offenders |

_____          _____
Investigator's Signature                       Date

SPP-03  (1-1-2005)                                          00037

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM
**Offender Protection Investigation Checklist**

| Check when Complete | Responses/Comments | Issues |
|---|---|---|
| | | 1.   Name of offenders threatening you, AKA or housing area |
| | | 2.   If name is not known, can you identify offenders from a video or a photo lineup? |
| | | 3.   Are the offenders threatening you gang-related? |
| | | 4.   What STG if any? |
| | | 5.   Are you gang-related?  If yes:   **(complete extortion checklist)**<br>a. What gang?<br>b. Are you active?<br>c. Are you an ex-member? |
| | | 6.   Are you paying protection?  If yes:<br>a. Offenders' names/AKA<br>b. Is he STG-related?<br>c. What are you paying with? |
| | | 7.   Have you been involved in sexual activities either voluntary or non-voluntary?  **(If non-voluntary, complete sexual assault checklist.)** |
| | | 8.   Were you housed with a particular group in County Jail? |
| | | 9.   Were you housed in protective custody in county jail? |
| | | 10.  Were you involved in any incidents in county jail (fights, assaults, extortion, or gang-related activities)? |
| | | 11.  Contact the County Jail to verify any information to substantiate the offender's allegations. |
| | | 12.  Were you assaulted?  If yes:<br>a. Check with medical records to verify any injuries.<br>b. If there are visible injuries, have the offender checked by the medical staff and note all injuries on the investigation. |
| | | 13.  Check the classification folder for any previous offender protection investigations. |
| | | 14.  Get any witness statements either from offender or staff. |
| | | 15.  Verify as much information from the offender as possible. |
| | | 16.  Is there any other pertinent information that you could provide for this investigation? |

Investigator's Signature _____     _____ Date

SPP-04 (1-1-2005)

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM
Sexual Abuse Investigation Checklist

*The below procedures are to be followed in the event that an offender alleges that he has been sexually assaulted. The checklist is to be turned in with the SPP-02 "Offender Protection Investigation Form" that is completed for the incident.*

| Check when Complete | Time Completed (circle am/pm) | Procedures |
|---|---|---|
| | (a.m./p.m.) | 1. Upon the allegation being made, immediately escort the alleged victim to the medical department. Notify medical staff of the offender's allegation. |
| | (a.m./p.m.) | 2. If there are no visible injuries, take one photograph of the front and one of the back of the offender while he is wearing State-issued underwear. If there are injuries, take photographs of the injuries as well as the front and back of the offender. All photographs are to be immediately labeled and signed by the security staff member taking the photographs. |
| | (a.m./p.m.) | 3. Notify Duty Warden |
| | (a.m./p.m.) | 4. Notify OIG who will make the determination as to the necessity of completing a rape kit. |
| | (a.m./p.m.) | 5. Notify the Unit Safe Prisons Coordinator |
| | (a.m./p.m.) | 6. Notify the Forensic Medical Examination Victim's Representative if a rape kit is to be conducted and the offender wishes to have a representative present |
| | (a.m./p.m.) | 7. Determine the location of the alleged assault and protect and isolate it as a crime scene. Take photographs and videotape of the area. |
| | (a.m./p.m.) | 8. If possible, collect the clothing the alleged victim was wearing at the time of the assault or immediately after and place the clothing in separate paper sacks. Properly label the items utilizing the evidence tags in Central Control. Limit the number of people who handle these items to the absolute minimum and complete the chain of custody. |
| | (a.m./p.m.) | 9. Identify the alleged assailants and immediately place them in Pre-Hearing Detention. |
| | (a.m./p.m.) | 10. Take photographs of the assailants and immediately label them. |
| | (a.m./p.m.) | 11. Collect the clothing of the assailants and place the items in separate paper sacks. Label the sacks utilizing the evidence tags in Central Control. Limit the number of people who handle this evidence to the absolute minimum. |
| | (a.m./p.m.) | 12. Report the incident to the Emergency Action Center (EAC). This must be done within three (3) hours of when the alleged incident was reported by the offender. |
| | (a.m./p.m.) | 13. Identify all staff who would have been in the vicinity of the alleged assault and interview them. Obtain written statements from all staff members. |
| | (a.m./p.m.) | 14. Draft a written report documenting the entire incident: before, during, and after. Include all of the information obtained in the previous steps. The names of the staff who collected evidence, including photographs and videotapes, should be documented with what they specifically did and outlined in the text. |
| | (a.m./p.m.) | 15. Complete the TNG-93 and send e-mail to EAC and all other pertinent staff. |
| | (a.m./p.m.) | 16. Complete an Offender Protection Investigation in accordance with the Safe Prisons Plan and turn into the Chief of Unit Classification. |
| | (a.m./p.m.) | 17. Inform medical personnel to refer the victim to an Agency psychologist.. |

_____          _____
Investigator's Signature                          Date

SPP-05 (9-1-2005)

03039

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM
Subsequent Offender Interview
(Repetitious Allegations of Life Endangerment)

Offender Name: _____    TDCJ #: _____    Unit: _____

Date of Prior Investigations: _____    Prior UCC Findings: _____

Current Status (recommend transfer, no action, etc.): _____

Summary of Subsequent Offender Interview: _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

A complete and thorough review of the previous life endangerment investigation dated _____ has been conducted, to include subsequent interviews completed by _____. **Based on this review, it** is determined that there is no new or additional information to submit. The allegations **reported by said offender are** repetitious and/or frivolous; therefore, a completed Offender Protection Investigation Form **(SPP-02) or UCC Review is not** warranted at this time. The Offender was advised that if he can provide any new or additional **information a subsequent** life endangerment investigation will be initiated.

_____    _____
Investigator's Signature                                        Date


_____ Concur

_____ Do not concur; complete Offender Protection Investigation Form (SPP-02)


_____    _____
Signature, Major or above                                       Date

SPP-06 (1-1-2005)

03040

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM
Potential Predator Alert

_____ UNIT

Offender Name _____ TDCJ # _____ Race _____ / Sex _____ / Age _____

Gang/Clique Affiliation _____

☐  ALLEGED SEXUAL ASSAULT        ☐  EXTORTION

**Unit Classification Review**

Current Institutional Adjustment Record (Screen 7) Indicators: _____

_____

_____

_____

Last 90 Days Disciplinary Offense History (Screen 6): _____

_____

_____

_____

Housing Assignment: _____      Work Assignment: _____

PHOTOGRAPH

ORIGINAL TO MAJOR; COPY TO SAFE PRISONS FOLDER

SPP-07 (1-1-2005)

00041

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM
**Incoming Chain Interview**

Offender Name: _____    TDCJ #: _____    Unit: _____

Prior Units: _____    Prior TDCJ #'s: _____

SID #: _____    DOB: _____    Race _____ / Sex _____ / Age _____ / Height _____ / Weight _____

STG Affiliation: _____    AKA: _____

LID's - ☐ Yes ☐ No    Extortion History - ☐ Yes ☐ No    Prior Sexual Assault Allegations - ☐ Yes ☐ No

Security Designators: _____    Other Indicators: _____

Disciplinary History: _____

_____

County of Conviction: _____    Current Sentence: _____ years

Convictions: _____

_____

**POTENTIAL VICTIM:** ☐ Yes ☑ No

I am **<<STATE NAME>>**, and I am on of the coordinators for the Safe Prisons Program (SPP) here at the **<<Unit Name>>** Unit. What that means is that myself and one of the members of the SPP Team interviews all newly arrived offenders and we investigate all allegations of extortion and/or sexual assault.

Do you know what Extortion is? _____ (*Explain TDCJ's Extortion Policy and the consequences of participating in Extortion. You must write your name of conviction and TDCJ # on all stamps and envelopes within 1 hour of purchase and you also must maintain possession of all commissary receipts to prove authorized possession*)

Are you Homosexual? ☐ Yes ☐ No    Bisexual? ☐ Yes ☐ No

Are you going to make weapons and use them? ☐ Yes ☐ No   Comments: _____

Do you plan on assaulting other offenders? ☐ Yes ☐ No   Comments: _____

If you are given an order to do something or to stop doing something will you comply with that order? ☐ Yes ☐ No

If you are sexually assaulted or if someone is attempting to extort something for you, or if you know of someone who has been assaulted or is being extorted, **DO**: Notify a member of security staff or an employee of TDCJ as soon as possible and provide as much of the following information as possible: Names and /or AKA's housing locations, physical descriptions, times, places, witnesses, type of assault, (physical or sexual) or extortion (money sent to books, property, commissary, or sexual) kites, or any physical evidence you can think of.

Do you have any questions? _____

_____

Observations: _____

_____

_____

_____

Offender's Signature _____    TDCJ # _____    Date _____

Investigator's Signature _____    Date _____

SPP-08 (1-1-2005)    09042

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM

Inter-Office Communication

TO:        Inmate Trust Fund                          DATE: _____

FROM:      Warden _____
           _____ Unit
           Office of the Inspector General
           (for criminal convictions)

SUBJECT:   Forfeiture/Confiscation of funds deposited to the Offender Trust Fund **account of:**
           Offender _____
           TDCJ # _____

The above mention offender has received/obtained funds in violation of the **Texas Government**
Code Section 501.014, Administrative Directive 14.62. "Guidelines for Handling **Offender Funds,**
Accounts, and Transactions" or the Safe Prisons Plan.

Disciplinary report # _____ was filed (copy of disciplinary **report attached).** The
offender was properly notified of the disciplinary case. The offender has been **tried and found**
guilty of this offense. The offender must now forfeit $ _____ **which shall be**
transferred from the offender's account in Inmate Trust Fund to the "Forfeiture Funds Account."

ACTION: _____

Transfer $ _____

_____    _____
Signature Authority                 Date

cc:    Unit Classification File

SPP-09 (1-1-2005)

00043

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM

### Incident Investigation Form

Page 1 of 2

Date(s) of Incident _____     Time of Incident _____     Unit _____

| Victim(s) Name(s) | | TDCJ # | Hsng Asgn | Work Asgn |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

| Alleged Extortionist Perpetrators' Name(s) | | TDCJ # | Hsgn Asgn | Work Asgn |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

Offender Protection Investigation Completed?  ☐ Yes  ☐ No

Summary of Events: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

| Witnesses(s) Name(s) | TDCJ # | Lineup Code ** |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

** Lineup Code = Use for a photo lineup.  For example, if the alleged perpetrator was #3 in the photo lineup and the witness picked #3, enter #3 next to the alleged perpetrator's name and TDCJ # to show that he was #3 in the lineup.

<u>Monetary Extortion</u>

Bank Screens printed for Victim(s) and Perpetrator(s)?     ☐ Yes  ☐ No     Amount Extorted  $ _____

Investigative Holds Placed:  ☐ Yes  ☐ No     Account # _____

Forfeiture/Confiscation IOC send to Commissary/Trust Fund?  ☐ Yes  ☐ No     _____

_____

<u>Sexual Extortion</u>

Received Copy of Offender Protection Investigation?     ☐ Yes  ☐ No     (Attached)

Forensic Medical Examination Conducted?     ☐ Yes  ☐ No     Date: _____

Forensic Medical Examination Representative requested?     ☐ Yes  ☐ No

If so, was provided?     ☐ Yes  ☐ No

Was OIG notified?     ☐ Yes  ☐ No     Date: _____

SPP-10  (1-1-2005)

Incident Investigation Form continued                    Page 2 of 2

Commissary/Property Extortion

Commissary Screens printed for Victim(s) and Perpetrator(s)?

Items Extorted                                          Monetary Value

_____                    _____
_____                    _____
_____                    _____
_____                    _____
_____                    _____

## Information Source

| | | | | | |
|---|---|---|---|---|---|
| Offender | ☐ | Offender Grievance | ☐ | Family Liaison | ☐ |
| UCC | ☐ | Mailroom | ☐ | Other (List below) | ☐ |
| Offender Protection Investigation | ☐ | Office of Inspector General | ☐ | | |
| STG | ☐ | Ombudsman | ☐ | | |

_____

_____

## Housing Disposition of Involved Offenders

| Offender Name | TDCJ # | Hsng Asgn | Offender Name | TDCJ # | Hsng Asgn |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## Disposition of Investigation

_____

_____

_____

_____

## Notifications

| Office | Date | Time | Contact (please print) |
|---|---|---|---|
| Mailroom Supervisor ☐ | _____ | _____ | _____ |
| STG Officer ☐ | _____ | _____ | _____ |
| Chief of Classification ☐ | _____ | _____ | _____ |
| OIG Investigator ☐ | _____ | _____ | _____ |

_____          _____          _____
Unit Safe Prisons Program Coord.(USPPC) (sign)          USPPC (Print)                              Date

SPP-10 (1-1-2005)                                        00045

PHOTO

_____ **Unit**

**USPP Offender Profile**

_____ **Date**

| | | | |
|---|---|---|---|
| Offender's Name | | TDCJ # | |
| Nickname (A/K/A) | | Projected Release Date | |
| Offense | | Sentence | |
| County of Conviction | | STG Affiliation | |

Predator ☐  Victim ☐  Witness ☐  Unknown ☐

Height                                                                Weight

Offender's Recent Bank History

Offender's Previous Disciplinary/Freeworld History

| | |
|---|---|
| Extortion | |
| Sexual Abuse | |
| Trafficking and Trading | |
| Possession of Contraband | |
| Sexual Misconduct | |
| Other Aggressive/Assaultive Behavior | |

---

PHOTO

_____ **Unit**

**USPP Offender Profile**

_____ **Date**

| | | | |
|---|---|---|---|
| Offender's Name | | TDCJ # | |
| Nickname (A/K/A) | | Projected Release Date | |
| Offense | | Sentence | |
| County of Conviction | | STG Affiliation | |

Predator ☐  Victim ☐  Witness ☐  Unknown ☐

Height                                                                Weight

Offender's Recent Bank History

Offender's Previous Disciplinary/Freeworld History

| | |
|---|---|
| Extortion | |
| Sexual Abuse | |
| Trafficking and Trading | |
| Possession of Contraband | |
| Sexual Misconduct | |
| Other Aggressive/Assaultive Behavior | |

SSP-11 (1-1-2005)

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM

## Monthly Safe Prison Report
### Meeting Flow Sheet

| Region: | Unit: | Date: |
|---|---|---|

| | |
|---|---|
| ☐ Yes ☐ No | Were the members of the Safe Prisons Team present? (*Warden, Major, Classification, Security Supervisor, STG, Extortion, Mailroom, Counsel Substitute, Unit Risk Manager, Victims Representative*) |
| ☐ Yes ☐ No | Was the Safe Prison Report from last months meeting reviewed by the Safe Prisons Team? |
| ☐ Yes ☐ No | Did the STG office provide a summary of STG activity for the last month? |
| | • Number of confirmed STG investigations submitted to the Region? |
| | • Number of suspected STG investigation submitted to Region? |
| | • Number of monitored other investigations? |
| ☐ Higher ☐ Lower | • Were the total numbers of STG investigations higher or lower than last month? |

Please provide an analysis and explanation for the higher of lower STG investigations:

| | |
|---|---|
| ☐ Yes ☐ No | Did the EIT officer provide a summary of EIT activity for the month? |
| | • Number of safe prison related shakedowns conducted for month? |
| | • Number of safe prison related investigations conducted for month? |
| | • Are there files on all suspected / confirmed victims / predators? |
| ☐ Higher ☐ Lower | • Were the total number of extortion related shakedowns / investigations higher or lower than last month? |

Please provide an analysis and explanation for the higher of lower Safe Prison investigations:

| | |
|---|---|
| ☐ Yes ☐ No | Did the Classification representative review offender protection activity for the month? |
| | • Number of offender protection investigations completed for month? |
| | • Number of offender protection investigations completed last month? |
| | • Are all identified victims and predators on the unit appropriately housed and assigned |
| ☐ Higher ☐ Lower | • Were the total numbers of offender protections investigation higher or lower than last month? |

Please provide an analysis and explanation for the higher of lower Safe Prison investigations, Offender Protection investigations for the current month? Were there patterns in location, time, and group?

| ☐ Yes ☐ No | Were number of suicides / suicide attempts reviewed for the month. |
| --- | --- |
| | • Number of suicides / suicide attempts for month? |
| | • Number of suicides / suicide attempts last month? |
| ☐ Higher ☐ Lower | • Were the total numbers of suicides / suicide attempts higher or lower than last month |

Please provide an analysis and explanation for the higher of lower suicides / suicide attempts for the current **month? Were there patterns in** location, time, and group?

| ☐ Yes ☐ No | Did the counsel substitute provide a summary of disciplinary activity for the month? |
| --- | --- |
| | • Number of Safe Prison related disciplinary cases written for month? |
| | ➤ Code 2.1 |
| | ➤ Code 2.2 |
| | ➤ Code 2.3 |
| | ➤ Code 5.1 |
| | ➤ Code 5.2 |
| | ➤ Code 5.3 |
| | ➤ Code 7 |
| | ➤ Code 21 |
| | ➤ Other Disciplinary Codes |
| ☐ Yes ☐ No | • Was a copy of the safe prison investigations placed in the victim / predator file? |
| ☐ Yes ☐ No | • Was a copy of the sexual assault investigation forwarded to the OIG and Unit Warden? |
| ☐ Yes ☐ No | • Were all cases of Sexual Assault allegations reported to the Victims Representative? |
| ☐ Yes ☐ No | • Were all safe prison related disciplinary cases forwarded to the UCC for disposition? |
| ☐ Yes ☐ No | • Was it the recommendation of the UCC to refer the victim of sexual assault to the Unit Health Administrator for follow-up treatment? |

What were the names of the offenders alleged / confirmed to be victim / predator of extortion / sexual assaults? *(Attach additional sheets if necessary)*

| Offender Name Last / First Initial | TDCJ Number | EAC # | Victim / Predator |
| --- | --- | --- | --- |
| | | | |
| Offender Name Last / First Initial | TDCJ Number | EAC # | Victim / Predator |
| | | | |
| Offender Name Last / First Initial | TDCJ Number | EAC # | Victim / Predator |
| | | | |
| Offender Name Last / First Initial | TDCJ Number | EAC # | Victim / Predator |

SPP-12 (1-1-2005)

| ☐ Higher ☐ Lower | Were the total numbers of offender protection investigations higher or lower than last month? |
|---|---|

Please provide an analysis and explanation for the higher of lower Safe Prison related disciplinary cases, for the current month are there any patterns in location, time, and group?

| ☐ Yes ☐ No | Did the Unit Risk Manager provide a summary of all injuries in Showers, Rec. Yards and Cells? |
|---|---|
| | Were all suspicious injuries investigated for possible Safe Prison related issues? |
| ☐ Higher ☐ Lower | Were the total numbers of Shower, Rec, Yard and Cell injuries higher or lower than last month? |

Please provide an analysis and explanation for the higher of lower Shower, Rec. Yard, Cell injuries for the current month? Were there any patterns in location, time, and group?

| ☐ Yes ☐ No | Did the Mailroom staff member provide a summary of Safe Prison activity for the month? |
|---|---|
| ☐ Higher ☐ Lower | Were the total numbers of Mail Room issues higher or lower than last month? |

Please provide an analysis and explanation for higher or lower Mail room activity for the current month? Were there patterns in location, time and group?

## MONTHLY UNIT SUMMARY

Please provide an analysis and summary of Safe Prison activity for current month?

What is the action plan for Safe Prison activity for next month? (Shakedowns, interviews, heightened security, should be related to information regarding patterns in location, time and group as discussed above.

cc:  Unit Warden
     Regional Office
     Safe Prisons Program Manager
     File

SPP-12 (1-1-2005)

03049

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## SAFE PRISONS PROGRAM
### Notice to Offenders

TDCJ strives to maintain the safe and security of all offenders incarcerated within the Agency. However, in some situations, measures must be taken to achieve a greater degree of protection for certain offenders.

If an offender is being pressured by another offender for money, property, or sexual favors, the offender should immediately contact a correctional officer, a case manager, the Warden, the Chaplain the Office of the Inspector General, or any staff member with whom they feel comfortable. It is imperative that one of these individuals be contacted immediately so that they can help the offender be removed from a potentially serious situation.

Sexual Assault

A.  If you are a victim of a sexual assault it is imperative that you contact a correctional officer, a case manager, the Warden, the Chaplain, or the Office of the Inspector General immediately. DO NOT   BATHE, SHOWER, CHANGE YOUR CLOTHES OR BRUSH YOUR TEETH. It is important that evidence be collected to assist in your attacker's prosecution. Physical evidence is important because law enforcement relies heavily on the information.

The person you contact will immediately take you to a safe place. You will be examined by qualified medical personnel and will receive treatment for any injuries while evidence is gathered. At your request, a representative for you will be present during the examination to counsel you and provide any other supports you may need (i.e., Chaplain, Psychologist/Case Manager.)

A variety of steps may be taken, based on your individual circumstances, to ensure your safety. Additional counseling and medical assistance is available to you on a continual basis.

B.  If you are the perpetrator of a sexual assault, the following are the risks involved.

1. The possibility of infection by the HIV virus that causes AIDS.
2. The possibility of contracting other sexually transmitted diseases
3. You are already an incarcerated felon, so you would face a minimum of a 5 to 99 year or life sentence due to a prior conviction. The more prior convictions you have, the higher the possible sentence.
4. You risk confinement in Administrative Segregation, a single celled custody due to being a threat to other offenders.
5. Stay clear of assaultive, extortion or gang activity.

A representative will be available, upon an offender's request, to be present during a forensic medical examination on an offender alleged as the victim of a sexual assault. A forensic medical examination is conducted after an alleged sexual assault for the purposes of collection and preserving evidence related to the investigation or prosecution of the alleged assault. The representative may only provide the injured person with counseling and other support services.

Copied from the ECHO/TEXAS PRISON NEWS Volume 74, No. 2 March 2002 page 10

SPP-13 (1-1-2005)



# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## SAFE PRISONS PROGRAM
### Aviso a los Presos

TDCJ se esfuerza de mantener la seguridad de todos los presos encarcelados dentro de la Agencia. Sin embargo, en algunas situaciones, las medidas deben ser tomadas para alcanzar un mas gran grado de proteccion por cierto presos.

Si un preso es presionado par otro preso para el dinero, la propiedad, o favores sexuales, el preso inmediatamente deberia ponerse en contacto con un official correccional, un Gerente de Caso (Case Manager), el Guardian (Warden), El Capellan, la Oficina del Inspector El General, o cualquier empleado con quien ellos sienten comodos. Es imperative que uno de estos individuos ser puesto en contacto inmediatamente para que ellos puedan ayudar al preso ser quitado de una situacion potencialmente seria.

### Asaltos Sexuales

A. Si usted es la victima de un asalto sexual, es imperative que usted se ponga en contacto con un official correccional, un Gerente de Caso (Case Manager), el Guardian (Warden), el Capellan, o la Oficina del Inspector el General inmediatamente. No banese, duchese, cambia su ropa, o cepille sus dientes. Es importante que la evidencia ser recogido para asistir en el procesamiento de su atacante. La evidencia fisica es importante porque la aplicacion de la ley confia pesadamente en la informacion.

La persona con la que usted se pone en contacto inmediatamente le tomara a un lugar sana. Usted sera examinado por el personal calificado medico y recibira el tratamiento para cualcsquiera heridas mientras la evidencia es juntada. En su peticion, un representante para usted estara presente durante el examen para aconsejarle y proporcionara cualquier otro apoyo el que usted puede necesitar (esto es, el Capellan, Psicologo, Gerente de Caso).

Una variedad de pasos puede ser tomada, basada sobre sus circunstancias individuales, asegurar su seguridad. El asesoramiento adicional y la ayuda medica le estan disponibles sobre una base continua.

B. Si usted es el perpetrador de un asalto sexual, lo siguiente es los riesgos complicados.

1. La posibilidad de infeccion par el virus de inununodeficiencia humano que causa el SIDA (AIDS).
2. La posibilidad de contraer otras enfermedades de transmission sexual.
3. Usted es ya un criminal encarcelado, entonces usted afrontaria un minimo de un 5 a 99 ano o la cadena perpetua debido a una conviccion previa. Las convicciones mas previas usted tienen, el mas alto la oracion posible.
4. Usted arriesga el confinamiento en la Segregacion Administrativa, una custodia en celda sola debido a usted ser una amenaza a otros presos.
5. Evite de actividades de as altos, la extorsion y de pandillas.

Un representante estara disponible, por la peticion de un preso, estar presente durante un examen forense medico de un preso presunto para haber sostenido heridas como la victima de un asalto sexual. Un examen forense medico es conducido despues de un asalto sexual presunto para los objetivos de recogimiento y la conservacion de la evidencia relacionada a la investigacion o el procesamiento del asalto presunto. El representante solo puede proporcionar al herido por asesoramiento y otros servicios de apoyo.

Sexual Assault Awareness

**Texas**
**Department of Criminal Justice – Correctional Institutions Division**

**Safe Prisons Program**

ZERO SEXUAL ASSAULTS :
"Achieving a Safe Environment for All Through Positive Change by All"

(SPP-14)

---

## FACTS FOR THE OFFENDER WHO SEXUALLY ASSAULTS OTHER OFFENDERS:

All cases of sexual assault are investigated by the Office of the Inspector General as a criminal investigation. You may be prosecuted for a criminal offense and if found guilty of a felony, any additional prison time will be stacked on top of your current sentence in accordance with Texas law.

If you are convicted your VICTIM will have an opportunity to write a statement which can impact your SENTENCE LENGTH and can affect your ability to parole.

You will be a REGISTERED SEX OFFENDER upon release from prison.

YOU WILL BE ISSUED A DISCIPLINARY CASE if found guilty, sanctions will be harsh. In addition, your classification level will be reviewed and likely downgraded, which could mean a transfer to a higher security prison or housing unit with significantly less freedom of movement and limited privileges. If you have family, will this affect your loved ones and their ability to visit you?

Engaging in homosexual conduct in prison significantly increases your risk of HIV infection, along with exposing you to other sexually transmitted diseases.

If you have trouble controlling your actions seek help from mental health staff and / or consider participating in programs designed to control anger or reduce stress. To reduce immediate feelings of anger or aggression try talking to or writing a friend, meditate, or do breathing exercises to relax, or engage in some type of exercise.

---

## DID YOU KNOW?

Rape and sexual assault happen to females and males of all ages, from infancy to the senior years.

98% of males who have raped boys reported they are heterosexual. Most males who assault men or women are married or report having girlfriends.

Sexual assault has nothing to do with the victim's present or future sexual orientation. Victims may be either heterosexual or homosexual.

A survivor is not at fault for the rape even if she/he was in a secluded area or had previous consensual sex with the attacker.

If male victims of sexual assault ejaculated or became sexually aroused , it does not mean they were not raped or that they gave consent. These are normal, involuntary physiological reactions.

It is common for survivors of sexual assault to have feelings of embarrassment, anger, guilt, panic, depression, and fear for several months or years after the attack. Other common reactions include loss of appetite, nausea or stomach aches, headaches, loss of memory and / or trouble concentrating and changes in sleep patterns.

00052

## Sexual Abuse

⌘

Sexual abuse is defined as forcing another person, by violence or threats of violence, to perform a sexual act (a sexual act is any intentional contact between the genitals, arms, groin, breast, inner thigh, or buttocks, of one person and the genitals, mouth, anus or hands of another person), sexual fondling, or sexual assault with an object. The term Sexual Abuse includes the acts relating to sexual assault as described in the Texas Penal Code 22.011.

Predators use sex as a weapon to assault the body, mind, psyche and spirit of their victims. This is done to project power of authority.

Sexual assault affects everyone, either directly or through the experiences of those we care about. This issue can affect persons of any gender, age, race, ethnic group, socioeconomic status, sexual orientation, or disability.

The statistics are proof of this problem: according to the National Crime Victimization Survey (NCVS), in 2002 there were 247,730 victims of rape (this number does not include victims 12 or younger), seven out of every eight rape victims were female, and one in every eight rape victims was male. A 1998 study indicates that about 2.78 million American men have experienced an attempted or completed rape, and one out of every six American women have experienced an attempted or completed rape.

## RAPE AVOIDANCE

⌘

The only way rape can be prevented is when a potential rapist chooses NOT to rape. However, YOU may avoid an attack by keeping the following safety guidelines in mind:

Position yourself in "Safe Zones" areas where you can see a staff member and the staff member can see you. If you are being pressured for sex, report it to any staff member immediately.

Be aware of situations that make you feel uncomfortable. Trust your instincts. IF IT FEELS WRONG, LEAVE, GET HELP, OR CALL OUT FOR A STAFF MEMBER.

Don't let your manners or pride get in the way of keeping yourself safe. Don't be afraid to say "NO" or "STOP IT NOW."

Walk and stand with confidence. Many rapists choose victims who look like they won't fight back or are emotionally weak.

Avoid talking about sex and casual nudity. These things may be considered a come on, or make another believe that you have an interest in a sexual relationship.

Avoid purchasing any items from the commissary with the exception of hygiene items for the first 90 days. Large commissary spends will attract attention of predators.

Do not accept commissary items or other gifts from other offenders. Placing yourself in debt to another offender can lead to the expectation of repaying the debt with sexual favors.

## WHAT TO DO IF YOU ARE SEXUALLY ASSAULTED

⌘

IF THE ATTACK HAS JUST HAPPENED...

Get to a safe place. REPORT THE ATTACK TO A STAFF MEMBER IMMEDIATELY. The longer you wait the more difficult if is to obtain the evidence necessary for a criminal and / or administrative investigation.

Request immediate medical attention. You may have serious injuries that you are not aware of, and any sexual contact or exposure you to sexually transmitted disease.

Do not shower, brush your teeth, use the restroom, or change your clothes. You may destroy important evidence.

If you have been attacked or witnessed an attack, you should report the attack to any staff member, supervisor or the unit warden. You may also report the incident to the Office of the Inspector General investigator assigned to your facility. All allegations regarding sexual assault will be investigated immediately by OIG.

Later On...Seek the support of a trusted friend, family member, chaplain or the victim representative or coordinator on your facility. The days ahead can be traumatic and it helps to have people who care about you.... support you. Seek professional help. Mental Health staff is available for cases once 365 days a year, to listen and offer support.

## Rights of Crime Victims

An offender victim is entitled to the following rights within the Criminal Justice System as indicated in the Texas Code of Criminal Procedure, Chapter 56;

- Be protected from further harm or threats for cooperating with prosecution efforts.
- Have the victim's safety considered in the housing of the assailant.
- Information on court dates proceedings.
- Information about the procedures in a criminal proceeding and in the criminal justice system.
- Provide pertinent information on the impact of the offense to be considered a the time of sentencing and parole.
- Information about parole procedures and to e notified upon the release of the defendant from a TDCJ correctional facility.
- Be provided with a separate and secure waiting room for witnesses at court.
- Prompt return of any property held as evidence when it is no longer required.
- Have counseling regarding acquired immune deficiency syndrome (AIDS/HIV) if the offense creates the need.
- Be present at all court proceedings related to the offense, subject to the judge's approval.
- Complete a victim impact statement, detailing the emotional and physical impact of the crime on the victim and to have the statement considered by the judge at sentencing and by official prior to the release of the offender.
- Information on and an explanation of these rights.

## Derechos de Víctimas de Crimen

Un ofensor que es víctima está autorizado a los siguientes derechos dentro del Sistema Criminal de Justicia escrito en el codigo del procedimiento Criminal, Capitulo 56, de el estado de Tejas:

- Sera protegido contra más daño o amenazas por cooperar con los esfuerzos de prosecución.
- Estara la seguridad de la víctima considerada en la vivienda del asaltante.
- Información sobre fechas de procedimientos de corte.
- Información sobre los procedimientos en un proceso criminal y en la Sistema Criminal de Justicia.
- Proveer información pertinente sobre el impacto de la ofensa a ser considerada al tiempo de la sentencia y la libertad condicional.
- Información sobre los procedimientos de libertad condicional y ser notificado sobre la libertad del acusado de una facilidad correccional de TDCJ.
- Será proporciónade de un cuarto para testigos separado y seguro en la corte.
- Pronto regreso de cualquier propiedad llevada como evidencia cuando ya no séa requerido.
- Tenga asesoramiento con respecto al Síndrome Inmuno Deficiencia Adquirido (AIDS/HIV) si la ofensa lo cree necesarió.
- Estar presente en todos los procedimientos de la corte relacionados con la ofensa, sujeto a la aprobación del juez.
- Completar una declaración del impacto de la víctima, detallando el impacto emocional y físico del crimen en la víctima y hacer que la declaración sea considerada por el juez al condenar y por el funcionario antes de dar libertad al ofensor.
- Información y explicación de estos derechos.

SPP-15 (1-1-2005)

00054

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM

### Offender Notification of Business

*Providing this information will assist staff in monitoring and tracking unauthorized monetary gains by an offender, investigate extortion, and promote a safer environment more conducive to productivity and rehabilitation. An offender receiving an inappropriate monetary gain from an unauthorized business activity as defined in the Disciplinary Rules and Procedures for Offenders will be subject to disciplinary action.*

Offender Name:_____ TDCJ #: _____ Unit: _____

I am involved in the sale of written, drawn or otherwise produced products from the sale of which I will be receiving funds deposited into my Trust Fund account. *(Describe what type of activity you will be engaged in, e.g., pencil drawings, handkerchief art, magazine articles, etc.)* _____

_____

_____

_____

These products are being sold with the assistance of: *(Provide the name(s) of the person(s) who assist you with the sale of these products and who will be depositing funds from those proceeds into your Trust Fund Account)*

_____

_____

_____

_____          _____
Offender Signature                              Date

_____          _____
Staff Witness Signature                         Date

_____          _____
Unit Safe Prisons Program Coordinator Signature     Date

cc: Victims Services

SPP-16 (1-1-2005)                                    00055

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
SAFE PRISONS PROGRAM
Extortion Correspondence Review Form

Unit: _____  Staff Name (Printed): _____  Date: _____

*Complete the information in the section regarding Offender or civilian addressor. This information is obtained from the addressor section on the outside of the envelope. Spaces are available for addressor's Name, addressor's TDCJ # or street address, addressor's Unit or city of residence. Utilize the UCR screens 1, screen 6, and screen 7 to fill out STG, Extortion and AKA information if applicable. AKA information may also be obtained from the offender travel card if applicable.*

From: _____

STG Status: ☐ Confirmed     ☐ Suspected     ☐ Not Applicable

Street Address/
TDCJ#: _____

History of Extortion/Sexual Abuse: _____

City/
Unit: _____

AKA: _____

*Complete the information in the section regarding Offender or civilian addressor. This information is obtained from the addressor section on the outside of the envelope. Spaces are available for addressor's Name, addressor's TDCJ # or street address, addressor's Unit or city of residence. Utilize the UCR screens 1, screen 6, and screen 7 to fill out STG, Extortion and AKA information if applicable. AKA information may also be obtained from the offender travel card if applicable.*

To: _____

STG Status: ☐ Confirmed     ☐ Suspected     ☐ Not Applicable

Street Address/
TDCJ#: _____

History of Extortion/Sexual Abuse: _____

City/
Unit: _____

AKA: _____

*Complete information in this section regarding third party if applicable. This information may be obtained through scanning of the offender mail during an investigation. The third party may be the subject or party of the extortion activity and is NOT identified as addressor or addressee and may be either an offender or civilian third party. Spaces are available for Name of third party, third party TDCJ # or street address, third party Unit or city of residence. Utilize the UCR screens 1, screen 6, and screen 7 to fill out STG, Extortion and AKA information if applicable. AKA information may also be obtained from the offender travel card if applicable.*

Third Party: _____
(If Applicable)

STG Status: ☐ Confirmed     ☐ Suspected     ☐ Not Applicable

Street Address/
TDCJ#: _____

History of Extortion/Sexual Abuse: _____

City/
Unit: _____

AKA: _____

☐ DENIED          ☐ ALLOWED

Comments: _____

_____

_____

_____

_____

_____

_____

_____

SPP-17 (1-1-2005)

00056