IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AUNDREA E. MATHIS, SR. | § | |
| TDCJ NO. 583934 | § | |
| | § | |
| v. | § | C.A. NO. C-05-523 |
| | § | |
| WARDEN STEVENSON, ET AL. | § | |

**ORDER DECLINING TO ADOPT
MEMORANDUM AND RECOMMENDATION
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, plaintiff Aundrea E. Mathis, Sr., claims that defendant Eileen Kennedy failed to protect him from inmate violence while he was confined at the McConnell Unit, despite the fact that she knew of the violence to which he was exposed. Defendant Kennedy moves for summary judgment to dismiss plaintiff's claim on the grounds that she was not personally involved in the alleged constitutional violation, and alternatively, if she was, that she is entitled to qualified immunity because her actions were not objectively unreasonable. (D.E. 22, 23). Plaintiff has not filed a response in opposition.

On January 25, 2007, the magistrate judge entered a memorandum and recommendation. (See D.E. 24). The Court declines to adopt the recommendation, and enters its Order granting defendant's motion for summary judgment and dismissing plaintiff's claims with prejudice.

## I.   JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II.   BACKGROUND

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and at all times relevant to the facts of this lawsuit, was incarcerated at the McConnell Unit in Beeville, Texas.  He filed his original complaint on August 8, 2005, alleging failure to protect claims against certain McConnell Unit wardens. (D.E. 1).  Following a November 18, 2005 Spears[1] hearing, plaintiff's claims against Warden Stephenson, Warden Massey, and Warden Castillo were dismissed, while his claim against Warden Kennedy[2] was retained. (See D.E. 10, 15, 16).

On May 22, 2006, Warden Kennedy filed her answer and raised the defense of qualified immunity.  (D.E. 19).  On September 20, 2006, Warden Kennedy filed the instant motion for summary judgment with exhibits (D.E. 22), and on October 23, 2006, she filed her first amended summary judgment motion.  (D.E. 23).

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[2] Warden Kennedy is now employed as the Senior Warden at the TDCJ Price Daniel Unit in Snyder, Texas.  (See D.E. 22, Ex. F).

2

Plaintiff has not filed a response to the summary judgment motion.[3]  According to his original complaint, he is seeking unspecified compensatory and punitive damages against Warden Kennedy.

### III. SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of her amended motion for summary judgment, defendant offers the following summary judgment evidence:[4]

Ex. A:   Plaintiff's classification records;

Ex. B:   Plaintiff's emergency action records;

Ex. C:   Plaintiff's grievance records;

Ex. D:   TDCJ Classification Plan (rev. Oct. 2003);

Ex. E:   TDCJ Safe Prisons Plan (rev. Sept. 2005);

Ex. F:   Affidavit of Eileen Kennedy; and

Ex. G:   Affidavit of Randy Minter, classification case manager at the Coffield Unit.

(See D.E. 22, attached exhibits).

The following facts are not in dispute:

On August 2, 2004, plaintiff's brother, Alvin Mathis, contacted Barbara Cormier with the TDCJ-CID Ombudsman Office, expressing concerns for plaintiff's safety.  (DX-A at 2).

---

[3] Pursuant to Local Rule 7.2, failure to respond is taken as a representation of no opposition.

[4] Reference to defendant's exhibits will be to "DX" followed by the exhibit letter and a page reference.

3

Ms. Cormier noted:

> Our office was contacted this date by the offender's brother, Alvin Mathis, with concerns for the offender's safety. The offender claims that his life is in danger due to recently being assigned to a new work and housing area. Claims that he is around gang members. Claims that he does not want any trouble and does not want to participate with any gang membership. Seeks new housing area. No other details were provided.

(DX-A at 2).

Ms. Cormier forwarded this information to Warden Stephens and asked him to conduct an investigation into plaintiff's life in danger ("LID") claim. Id.

Lieutenant Jennifer Quintana was assigned to conduct the LID investigation. (DX-A at 3). On August 2, 2004, Lieutenant Quintana interviewed plaintiff concerning his LID claim. (DX-A at 4-9). According to Lieutenant Qunitana's notes, plaintiff stated that his life was not in danger, that no offenders had threatened him, and that he simply wanted a job change to get back to the garment factory. (DX-A at 4). She noted, however, that in past interviews, plaintiff had admitted to being associated with both the Crips and the Bloods. Id. at 6-7. Because of this past gang affiliation, Lieutenant Quintana determined that the Security Threat Group Office ("STGO")should be advised. Id. at 7.

Plaintiff signed a waiver requesting that no further action be taken on his request for safe keeping. Id. at 6. However, he also

4

submitted a hand-written statement declaring that he did not belong to a gang, but that he was being pressured to pick sides and that he did not want to get involved. Id. at 8. His last lines were: "Don't think this is about just getting a job its about my safety as well. Please help." Id.

A Unit Classification Committee ("UCC") meeting was held on August 10, 2004 on plaintiff's LID claim. (DX-A at 9-10). The UCC members were Major Carillo, Jorge Veliz, and Amie Gaitan. (DX-A at 11). Based on Lieutenant Quintana's report, plaintiff's waiver, and his testimony that he was not having any problems, his previous request for a unit transfer was denied. (DX-A at 6, 9-10). Plaintiff's job assignment was changed from the garden squad to the laundry. Id. at 12.

On September 3, 2004, plaintiff appeared before a UCC seeking a promotion in his security status. (DX-A at 13). Eileen Kennedy presided over the meeting, and the promotion was granted. Id. Plaintiff did not raise any complaint about his life being in danger. Id.

On December 31, 2004, plaintiff attended a UCC meeting requesting a contact visit. (DX-A at 13). Warden Kennedy presided over the meeting. Id. Plaintiff's contact visit was granted. Id. Plaintiff did not indicate any concerns that his life was in danger. Id.

5

On March 19, 2005, at approximately 4:20 a.m, plaintiff was assaulted in the dining hall by offender Anthony Hampton. (DX-A at 14-23; DX-B). Sergeant Fenner immediately locked the entrance to secure the area and called for additional staff. (DX-A at 18; DX-B at 1). Plaintiff and Offender Hampton were separated and placed in hand restraints. (DX-A at 18, 20-26; DX-B at 1). Offender Hampton was found to have in his possession a $7_{1/2}$ inch metal object that had been sharpened at one end to make a weapon. (DX-A at 19, picture of weapon).

Plaintiff's injuries consisted of: a ½ inch laceration to the top of his head; a 1/4 inch circular wound to the middle of his upper back; a 1/8inch circular laceration to his left shin; and a 1/8 inch laceration to his inner lip. (DX-A at 27-29; DX-B at 2). Plaintiff received first aid for his injuries. Id.

Plaintiff was taken to Pre-Hearing detention following the incident with offender Hampton. (DX-B at 1). Plaintiff received a disciplinary case for fighting without a weapon. Id. Warden Kennedy was advised of the altercation between plaintiff and Hampton approximately 25 minutes after it happened. Id.

In a report dated March 30, 2005, Warden Kennedy noted that on March 23, 2005, a UCC meeting was held concerning the recent altercation between plaintiff and offender Hampton, and that the UCC had recommended that plaintiff be transferred to another Unit due to his being the victim of an assault with a weapon. (DX-B at

6

2).  On May 3, 2005, plaintiff was transferred off the McConnell Unit.  (DX-A at 31).

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  Id.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration &

Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## V. DISCUSSION

### A. Plaintiff's Failure to Protect Claim.

Defendant Eileen Kennedy moves for summary judgment on the grounds of qualified immunity.

The qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, shows that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established – that is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. at 624 (quoting Price, 256 F.3d at 369).

9

Once a defendant has invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002)(en banc)(per curiam). The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001).

**1.   Step 1: Constitutional violation.**

Prison officials have a duty to protect prisoners from violence at the hand of prison staff, as well as other inmates. See Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Id. (citing Farmer, 511 at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835.

Deliberate indifference may be inferred from the fact that the risk of harm is obvious. Hope, 536 U.S. at 738-39.

Essential to plaintiff's failure to protect claim is evidence that Eileen Kennedy *knew of* a substantial risk of harm to the

plaintiff.  <u>Farmer</u>, 511 U.S. at 847.  In addition to being a substantive element of a deliberate indifference claim, the knowledge requirement encompasses another essential element of liability: personal involvement.  To state a cause of action under § 1983, a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. <u>Woods v. Edwards</u>, 51 F.3d 577, 583 (5th Cir. 1995); <u>Thompson v. Steele,</u> 709 F.2d 381, 382 (5th Cir.1983).

***Plaintiff's allegation's against Warden Kennedy***

In his original complaint, plaintiff alleged the following:

> Approximately 4:08 a.m on March 19, 2005, I Aundrea Mathis was attacked and assaulted during an altercation that was prevented on my part.  It is the responsibility of the wardens to ensure the safety of the offenders residing on his or her unit.  The defendants in this case failed to hand down the proper security precautions and safety regulations for my life.  Had there been an officer present during this altercation, I would not have had to struggle for five long minutes with this outraged offender with a knife.  I feel it was deliberate indifference on the defendants part by allowing this to occur.

(D.E. 1 at 2-3).  This is the only allegation made against Warden Kennedy in plaintiff's original complaint: that she failed to "hand down the proper security precautions and safety regulations...".

At the November 18, 2006 <u>Spears</u> hearing, plaintiff alleged that, one or two months prior to the March 19,2005 assault, he

11

tried to get interviews with Warden Massey, Warden Castillo, and Warden Kennedy, to discuss his concerns that there were not enough correctional officers present in the common areas. He also testified that he filed I-60 requests, but that the wardens "never answered his I-60s."

Despite his allegation that he filed multiple I-60's complaining about the number of security staff in common areas, his grievance records indicate that he did not file any Step 1 or Step 2 grievances on this issue directed to Warden Kennedy, or any McConnell Unit warden, between August 2, 2004, and March 19, 2005. (DX-C). Similarly, there is no evidence in his grievance files that he filed any I-60 Requests to Officials during the six month period prior to the assault. Id. Similarly, in failing to file a response, plaintiff has failed to come forward with any evidence to establish a genuine issue of material fact that he placed Warden Kennedy on notice that htat he was in fear of an inmate assault.

For purposes of § 1915A screening, plaintiff's allegations in his original complaint and at the Spears hearing were taken as true. However, defendant Kennedy has now come forward with uncontested summary judgment evidence refuting personal involvement. From October 2002 to October 2005, she was employed as an assistant warden at the McConnell Unit. (DX-F, Kennedy Aff't at ¶ 2). She testified that she has no personal recollection of having spoken with plaintiff regarding any life endangerment claim

during that time. (DX-F, Kennedy Aff't at ¶ 3). She was not present at the August 10, 2004 UCC hearing. That hearing was attended by Major Domingo Carillo, Jorge Veliz, and Amie Gaitan. (DX-A at 11). Warden Kennedy testified that, had plaintiff approached her with a LID claim, she would have followed TDCJ procedure and notified the Chief of Unit Classification, a Major, or other ranking security supervisor. Id. At the Spears hearing, plaintiff testified only that he told Warden Kennedy that more security was needed in the common areas. He did not claim that he told her that his life was in danger. There is simply no evidence that Plaintiff ever communicated a LID claim to Warden Kennedy.

Plaintiff alleged that he sent Warden Kennedy I-60 forms requesting a transfer, and that she never responded. However, the evidence shows that it was plaintiff's brother who called the TDCJ-CID's Ombudsman Office on August 2, 2004, and that Lieutenant Quintana was then appointed to investigate his claims. (DX-A at 2). Upon investigation, Lieutenant Quintana noted that plaintiff was more concerned with a job transfer than in fear for his safety. (DX-A at 4-7). Moreover, plaintiff signed an Offender Waiver Statement requesting that no further action be taken regarding his request for safekeeping. (Id. at 6). He did not file any grievances, to Warden Kennedy or any other official, from August 10, 2004 through March 19, 2005. (DX-C, Plaintiff's Grievance Records). Thus, plaintiff's allegations that he complained to

Eileen Kennedy has been refuted by the summary judgment evidence. There is no evidence to suggest that plaintiff ever made his claims known to Warden Kennedy, such that she was never personally involved in the alleged constitutional violation. As such, there is no evidence to suggest that Eileen Kennedy knew of a serious risk of harm to plaintiff's health and safety, and failed to take reasonable measures to abate that risk. Thus, plaintiff fails to state a constitutional claim against Warden Kennedy, and she is entitled to qualified immunity.

   **2.   Step 2: Objective reasonableness.**

In the context of an Eighth Amendment failure to protect claim, whether a defendant's actions are objectively reasonable depends on whether the defendant both knew of the risk and failed to take reasonable measures to alleviate it. Farmer, 511 U.S. at 847. The Fifth Circuit has explained that "the 'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quoting Farmer, 511 U.S. at 838). Moreover, "negligence is insufficient to support a finding of liability." Adames v. Perez, 331 F.3d 508, 514 (5th Cir. 2003). That is, prison officials violate the Eighth Amendment only if they are both aware of a substantial risk to inmate safety *and* fail to

respond properly. Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir. 2004). There is no liability if the official responded reasonably to the risk, even if the harm ultimately was not averted. Id. When assessing objective reasonableness, it is necessary to articulate the asserted constitutional right more specifically. Thompson v. Upshur County, 245 F.3d 447, 460 (5th Cir. 2001). Thus, "[w]hen the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have known that the alleged acts of the defendants violated the United States Constitution." Id.

In not filing a summary judgment response, plaintiff has failed to sufficiently established that there was a known risk to his health and safety that defendant disregarded. Moreover, the uncontested record establishes that, on the day plaintiff's brother called with concerns for plaintiff's safety, an investigation was instigated. Plaintiff dismissed his brother's concerns and signed a waiver insisting that he did not want any further investigation into a safe keeping claim. (DX-A at 6). Based on this information, the UCC denied a transfer on August 10, 2004, and he did not appeal the decision. (DX-A at 11). There is no evidence that he wrote to Eileen Kennedy or any staff member from August 10, 2004 until the March 19, 2005 assault by offender Hampton. (DX-C). The UCC met four days later and recommended transfer, which Eileen Kennedy

15

reported in her memorandum to the Regional Director. (DX-B at 2). Plaintiff was then promptly transferred. (DX-A at 31).

Even if plaintiff had been able to state a claim against Warden Kennedy, which he cannot, the overall actions in responding to this situation were objectively reasonable. Warden Kennedy is entitled to qualified immunity.

## VI. RECOMMENDATION

Plaintiff has failed to present sufficient evidence of an excessive risk to his health and safety. In fact, he signed a waiver requesting that no further action be taken on his brother's inquiry into his safety. He has also failed to present sufficient evidence that Warden Kennedy knew of a substantial risk of serious harm to him. She was never involved in a UCC meeting and never served with a grievance or I-60 request. Finally, there is simply no evidence that plaintiff had any history with offender Hampton. Plaintiff make no allegation that offender Hampton was a member of the Crips or Bloods, or had any gang affiliation from plaintiff's past, or had any other known reason to harm him and that Warden Kennedy would be aware of this information. As such, the Court concludes that no genuine issue of material fact exists on plaintiff's claim for failure to protect. Accordingly, defendant's motion for summary judgment,(D.E. 22,23), is in all things GRANTED,

and plaintiff's claims against Warden Eileen Kennedy are dismissed with prejudice.

SIGNED this 1st day of February, 2007.

_____
Janis Graham Jack
United States District Judge